## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) <br> *ex rel.* **CUSTOMS FRAUD** ) <br> **INVESTIGATIONS, LLC,** ) <br> ) <br> **Plaintiff, Relator** ) <br> ) <br> **vs.** ) <br> ) <br> **VICTAULIC COMPANY,** ) <br> ) <br> **Defendant.** ) | **Civil Action No. 13-2983** |

## <u>MOTION TO DISMISS</u>

Pursuant to Fed. R. Civ. P. 12(b)(1) Defendant Victaulic Company ("Victaulic") respectfully moves to dismiss the complaint (Dkt. No. 1) for lack of jurisdiction. The grounds for this motion are set forth in the accompanying Memorandum in Support. In the alternative, Victaulic moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Pursuant to Local Rule 7.1(f), Victaulic respectfully requests oral argument on its motion.

Dated: October 10, 2013                Respectfully submitted,


                                         /s/ Brian R. Tipton
                                       Brian R. Tipton (Bar No. 84457)
                                       Florio, Perrucci, Steinhardt & Fader
                                       235 Broubalow Way
                                       Phillipsburg, New Jersey O8865
                                       Telephone: 908-454-8300
                                       Facsimile: 908-454-5827
                                       btipton@fpsflawfirm.com


                                       Thomas C. Hill (admitted *pro hac vice*)
                                       Jeetander T. Dulani (admitted *pro hac vice*)
                                       Pillsbury Winthrop Shaw Pittman LLP
                                       2300 N Street, N.W.
                                       Washington, D.C. 20037
                                       Telephone: (202) 663-8000
                                       Facsimile: (202) 663-8007
                                       thomas.hill@pillsburylaw.com
                                       jeetander.dulani@pillsburylaw.com

                                       *Counsel for Victaulic Company*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** **_ex rel._ CUSTOMS FRAUD INVESTIGATIONS, LLC,**<br><br>  **Plaintiff, Relator**<br><br> **vs.**<br><br> **VICTAULIC COMPANY,**<br><br>  **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 13-2983**<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT VICTAULIC COMPANY

Brian R. Tipton (Bar No. 84457)
Florio, Perrucci, Steinhardt & Fader
235 Broubalow Way
Phillipsburg, New Jersey O8865
Telephone: 908-454-8300
Facsimile: 908-454-5827
btipton@fpsflawfirm.com

Thomas C. Hill (admitted _pro hac vice_)
Jeetander T. Dulani (admitted _pro hac vice_)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C.  20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
thomas.hill@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

_Counsel for Victaulic Company_

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 7

I.  THE COMPLAINT MUST BE DISMISSED UNDER THE FCA'S PUBLIC
    DISCLOSURE BAR ................................................................................................... 9

    A.  The FCA Requires Relator to Show That the Constituent Elements of Its Claims
        Are Not Publicly Available ................................................................................ 11

    B.  All Material Elements of Relator's Claims Are Publicly Available ...................... 13

        1.  The Allegedly Misrepresented Facts – the "X" – Are in the Public Domain
            ............................................................................................................... 13

        2.  The Allegedly True Fact – the "Y" – Is Also in the Public Domain ........ 14

        3.  Relator Has Not Proven That It is an Original Source ............................... 15

II. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6)
    BECAUSE IT FAILS TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT
    RELATOR IS ENTITLED TO RELIEF AS REQUIRED BY RULE 8(A)(2) ................ 17

    A.  The Complaint Fails to Allege Facts Supporting a Claim That Victaulic Failed to
        Mark Pipefittings Made in China and Poland ..................................................... 18

    B.  Relator Fails to Plead Factual Allegations Making Plausible the Notion That
        Victaulic Had the Requisite Scienter ................................................................. 20

III. RELATORS CLAIM FOR MARKING DUTIES DOES NOT STATE A CLAIM
    UNDER THE FCA ..................................................................................................... 22

IV. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT FAILS TO
    PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(B) ............ 22

    A.  FCA is a Fraud Statute and Requires Pleading Fraud With Particularity ............. 23

    B.  The Complaint Fails to Plead With Particularity the Substance of the Fraud ...... 23

        1.  Complaint Fails to Specify the Contents of the Allegedly False Statements
            ............................................................................................................... 23

        2.  Complaint Fails to Specify Who Made the Allegedly False Statements or
            Otherwise Engaged in Alleged Fraud ....................................................... 25

    C.  Complaint Fails to Specify When, Where, or How the Alleged False Statements
        Were Made ......................................................................................................... 25

CONCLUSION .................................................................................................................. 27

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................ passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................ 20, 21

*Boone v. MountainMade Found.,*
   684 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................................... 6, 23

*Chesbrough v. VPA, P.C.*, 655 F.3d 461 (6th Cir. 2011) .......................................................... 24

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
   559 U.S. 280, 130 S. Ct. 1396 (2010) ........................................................................... 2, 10, 12

*Hoyte v. Am. Nat'l Red Cross,*
   518 F.3d 61 (D.C. Cir. 2008) ........................................................................................... 5, 22

*In re Shop-Vac Mktg. & Sales Practices Litig.,*
   No. 4:12-md-2380, 2013 WL 4049728 (M.D. Pa. Aug. 9, 2013) ........................................ 24

*Mikes v. Straus,*
   274 F.3d 687 (2d Cir. 2001) ................................................................................................. 26

*Schindler Elevator Corp. v. U.S. ex rel. Kirk,*
   131 S. Ct. 1885 (2011) ................................................................................................... 10, 11

*U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.,*
   186 F. Supp. 2d 458 (S.D.N.Y. 2002) ................................................................................. 12

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
   255 F. Supp. 2d 351 (E.D. Pa. 2002) ..................................................................................... 2

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
   473 F.3d 506 (3d Cir. 2007) ...................................................................................... 2, 10, 11, 15

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
   528 F. Supp. 2d 533 (E.D. Pa. 2007) ................................................................................... 27

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
   No. CIV. A. 94-7316, 2000 WL 1207162 (E.D. Pa. Aug. 24, 2000) ..................................... 23

*U.S. ex rel. Bain v. Ga. Gulf Corp.,*
   386 F.3d 648 (5th Cir. 2004) ............................................................................................ 5, 22

*U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.,*
   234 F.R.D. 113 (W.D. Pa. 2006) ................................................................................. 23, 25, 26

*U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.,*
   No. 1:11cv371, 2013 WL 1189707 (E.D. Va. Mar. 21, 2013) ............................... 2, 9, 10, 15

*U.S. ex rel. Costner v. URS Consultants, Inc.,*
   317 F.3d 883 (8th Cir. 2003) ................................................................................................. 25

*U.S. ex rel. Doe v. Staples, Inc.*,
    No. 08-846, 2013 WL 1192982 (D.D.C. Mar. 22, 2013) .................................... 3, 14

*U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*,
    495 F.3d 103 (3d Cir. 2007) ........................................................................ 5, 21

*U.S. ex rel. Hochman v. Nackman*,
    145 F.3d 1069 (9th Cir. 1998) ........................................................................... 4

*U.S. ex rel. Lobel v. Express Scripts, Inc.*,
    351 F. App'x 778 (3d Cir. 2009) ..................................................................... 17

*U.S. ex rel. Mistick PBT v. Hous. Auth. of City of Pittsburgh*,
    186 F.3d 376 (3d Cir. 1999) .............................................................. 11, 15, 16

*U.S. ex rel. Osheroff v. HealthSpring, Inc.*,
    No. 3:10-1015, 2013 WL 1399344 (M.D. Tenn. Apr. 5, 2013) ........................... 10

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.*,
    443 F. App'x 754 (3d Cir. 2011) ................................................................ 6, 23

*U.S. ex rel. Repko v. Guthrie Clinic, P.C.*,
    No. 3:04cv1556, 2011 WL 3875987 (M.D. Pa. Sept. 1, 2011) ........................ 10, 12

*U.S. ex rel. Sanchez v. Abuabara*,
    No. 10-61673-CIV, 2012 WL 1999527 (S.D. Fla. June 4, 2012)........................... 10

*U.S. ex rel. Schumann v. AstraZeneca PLC*,
    No. 03-5423, 2010 WL 4025904 (E.D. Pa. Oct. 13, 2010) .................................. 9

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
    14 F.3d 645 (D.C. Cir. 1994)........................................................................ 11

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*,
    944 F.2d 1149 (3d Cir. 1991) ......................................................................... 7

*U.S. ex rel. Totten v. Bombardier Corp.*,
    286 F.3d 542 (D.C. Cir. 2002)....................................................................... 23

*U.S. ex rel. Washington v. Educ. Mgmt. Corp.*,
    871 F. Supp. 2d 433 (W.D. Pa. 2012)................................................. 4, 20, 21

*U.S. ex rel. Wilkins v. United Health Grp., Inc.*,
    659 F.3d 295 (3d Cir. 2011) .......................................................................... 6

*U.S. ex rel. Zizic v. Q2Administrators, LLC*,
    No. 12-2215, 2013 WL 4504765 (3d Cir. Aug. 26, 2013) ........................ 9, 11, 16

*U.S. v. Sci. Applications Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) ..................................................................... 21

## STATUTES AND CODES

United States Code
    Title 19, section 1304(c) ................................................................................ 7

United States Code
  Title 31, section 3729.................................................................................... 1

United States Code
  Title 31, section 3729(a)(7) ..................................................................... 5, 20

United States Code
  Title 31, section 3729(b) ................................................................................ 4

United States Code
  Title 31, section 3730(d)(4) .................................................................... 26, 27

United States Code
  Title 31, section 3730(e)(4) ................................................................... passim

## RULES AND REGULATIONS

Code of Federal Regulations
  Title 19, section 103.31(a) ................................................................ 3, 13, 14

Code of Federal Regulations
  Title 19, section 4.7........................................................................... 3, 14

Federal Rules of Civil Procedure
  Rule 12(b)(1)................................................................................... 1, 10, 16

Federal Rules of Civil Procedure
  Rule 12(b)(6)................................................................................... 1, 17, 22

Federal Rules of Civil Procedure
  Rule 8................................................................................................. passim

Federal Rules of Civil Procedure
  Rule 8(a) ............................................................................................. 1

Federal Rules of Civil Procedure
  Rule 9(b) ....................................................................................... passim

## OTHER AUTHORITIES

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (3d ed.)... 23

John T. Boese, *Civil False Claims & Qui Tam Actions* 4-80 (2006) ......................................... 12

Patient Protection and Affordable Care Act,
  Pub.L. 111–148, 124 Stat. 119............................................................... 2, 10

Defendant Victaulic Company ("Victaulic") respectfully submits this Memorandum in Support of its Motion to Dismiss the Complaint (Dkt. No. 1) for lack of jurisdiction under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and for failure to state a claim for relief. *See* Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), 12(b)(6).

## PRELIMINARY STATEMENT

Relator Customs Fraud Investigations, LLC ("CFI")[1] filed this *qui tam* False Claims Act ("FCA") lawsuit under seal on May 30, 2013, alleging a theory that Victaulic sought to "import its foreign pipe fittings into the United States unmarked and undetected." Compl. ¶ 5. To that end, CFI alleges that Victaulic falsified "entry documents and otherwise conceal[ed] the foreign source of its pipe fittings" and thereby knowingly failed "to pay or disclose to CBP [United States Customs and Border Patrol] the marking duties the company owes as a result of importing unmarked or improperly marked foreign goods." Compl. ¶ 26. Barely two months later, on August 7, 2013, the United States Department of Justice ("DOJ") declined to intervene.

The DOJ's rapid decision to forgo intervention is a strong indicator that CFI simply has no basis for bringing this *qui tam* suit. CFI does not, and has never had any connection whatsoever to, relationship with, or knowledge of, Victaulic or its operations, and as such is not the original source of the alleged and unsupported potential infractions. Indeed, any random person could have drafted this complaint. Unsurprisingly then, CFI's complaint fails to present any factual allegations in support of its conclusory allegations. This utter lack of any facts or

---

[1] In its complaint, CFI notes that it is "a limited liability company organized and existing under the laws of the State of Maryland, with a principal place of business in Takoma Park, MD." Compl. ¶ 7. CFI fails to mention, however, that it is not in good standing in Maryland. *See* http://sdatcert3.resiusa.org/ucc-charter/DisplayEntity_b.aspx?EntityID=W14824627&EntityName=CUSTOMS+FRAUD+INVESTIGATIONS+LLC+++++++++++++++++++++++++++&TabNum=1 (last visited October 6, 2013). CFI also claims that it "conducts confidential research and analysis related to potential customs fraud." Compl. ¶ 7. But as detailed *infra*, CFI's complaint is devoid of any independent knowledge – and consists entirely of public shipping information that anyone could have obtained from a myriad of public accessible databases – and a series of conclusory allegations. As such, CFI is engaged in little more than a "fishing expedition" on the basis of some public shipping information.

1

understanding of Victaulic's products, processes, and operations causes its FCA complaint to fail. Indeed, the dearth of factual allegations in its complaint demonstrates that CFI has no direct or independent knowledge about Victaulic's business, nor does it have any knowledge that is independent of or materially adds to the publicly disclosed transactions that are included in Exhibit A to its complaint.

In sum, CFI's complaint is based on nothing more than a list of publicly available ship manifest data and a series of conclusory statements and allegations devoid of any factual support. As such, the Court should dismiss the complaint with prejudice for the following reasons:

1. The public disclosure bar of the FCA forecloses CFI's claims because it is based entirely on publicly disclosed information for which CFI is unable to show it was an original source. *See* 31 U.S.C. § 3730(e)(4) (courts shall dismiss *qui tam* claims based on publicly disclosed information); *see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 398 (E.D. Pa. 2002), *aff'd on other grounds*, 473 F.3d 506 (3d Cir. 2007) ("To reiterate, where all of the essential elements of a *qui tam* claim have been publicly disclosed, the relator must be an original source of *each* of these elements if the public disclosure bar is to be surmounted pursuant to § 3730(e)(4)(B)."). [2] Specifically, the allegations concerning Victaulic's foreign imports depend entirely upon data that is publicly available through a wide

---

[2] This portion of the FCA was amended in 2010 as part of the Patient Protection and Affordable Care Act, Pub.L. 111–148, 124 Stat. 119. *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 559 U.S. 280, 130 S. Ct. 1396, 1400 n. 1 (2010) (acknowledging the amendment and explaining that the amendment was not retroactive). And while the 2010 amendment revised the particular language of the public disclosure bar – most courts have continued to engage in the same threshold analysis of whether a *qui tam* complaint was based in whole or part on a public disclosure – and have continued to dismiss *qui tam* claims like this one where the relator could not establish itself as an original source. *See U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11cv371, 2013 WL 1189707 (E.D. Va. Mar. 21, 2013) ("As a threshold matter, it is clear from the FCA's history and from the text of the 2010 amendments that the public disclosure bar is jurisdictional. Prior to the 2010 amendments, the FCA provided that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure [in an enumerated source.]" 31 U.S.C. § 3730(e)(4) (2006). The FCA now provides that "the court shall dismiss an action" if public disclosure has occurred, unless opposed by the Government. 31 U.S.C. § 3730(e)(4) (2010). The relators argue that the FCA's public disclosure bar has been rendered non-jurisdictional by the 2010 amendment because Congress has not made clear that the public disclosure bar is jurisdictional. This argument fails.)

variety of trade publications on the internet, including PIERS Global Intelligence Solutions ("PIERS").[3] There are absolutely no facts alleged in the complaint to support CFI's conclusory and self-serving claim that it was an original source. Indeed, the only factual allegations in the complaint relate to the total, aggregated amount of pipefittings that Victaulic imported from 2003-2012 – information that is entirely public. *See U.S. ex rel. Doe v. Staples, Inc.*, No. 08-846, 2013 WL 1192982, at *4 (D.D.C. Mar. 22, 2013) ("PIERS reports are readily accessible to the public on the PIERS website. While not a traditional news source, this site qualifies as 'news media' in light of the ample precedent in favor of broad construction of the channels of public disclosure listed in § 3730(e)(4)(A). . . . The shipping information underlying the PIERS trade reports is also available to public subscribers through the U.S. CBP Automated Manifest System. 19 C.F.R. §§ 4.7, 103.31(a) (requiring [CBP] to provide vessel manifest information to the press). The allegedly misrepresented country of origin, here, therefore, was publicly disclosed in both the 'news media' and 'administrative report[s]' within the meaning of § 3730(e)(4)(A).").

2.       The complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure because it lacks factual allegations sufficient to support even the most basic elements of a claim under the FCA. As a threshold matter, because CFI has no connection to Victaulic, it is incapable of alleging any facts in support of its claim that Victaulic failed to mark any of its imported pipefittings from China or Poland. All CFI offers in its complaint are a series of conclusory assertions that "[o]nly a miniscule fraction of Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin" and that Victaulic falsifies "its entry documents

---

[3] PIERS and other trade publications are published to thousands of subscribers every day and PIERS allows subscribers to research imports for a particular importer back to 1977. A key source of the trade information that PIERS relies upon is the CBP Automated Manifest System. CBP in turn obtains its information directly from importers or their agents. *See* http://www.piers.com/plansandpricing ("We offer transactional data for all U.S. waterborne imports. This is gathered by PIERS directly from the manifests of Bills of Lading filed through the Automated Manifest System (AMS) of U.S. Customs and Border Protection (CBP).").

and otherwise conceal[s] the foreign source of its pipe fittings." Compl. ¶¶ 25, 26. But CFI fails to make any factual allegations in support of these conclusory statements. In fact, the only factual allegations in CFI's complaint deal with the total, aggregated amount of pipefittings that Victaulic has imported since 2003. Compl. ¶¶ 22, 23. But even these factual allegations are fundamentally flawed. A review of Exhibit A which purports to show Victaulic's volume of imported pipefittings from China and Poland from 2003 through late 2012 – simply provides basic manifest information (date, country of origin, port of import, weight, and the listed importer) – which as noted earlier is publicly available from CBP's database and third party trade publications. Moreover, CFI's conclusory claim that Victaulic was motivated to commit this fraud to "profit[] handsomely from the higher prices that domestic pipe fittings command in the U.S. market" is completely unsupported by any factual allegations indicating the basis for CFI's conclusion. Indeed, a review of Exhibit A plausibly supports the inference that Victaulic accurately completed its entry documents and marked its imported pipefittings. Thus, CFI fails to provide a basis for concluding that any alleged statements about the marking of imported pipefittings were actually false.

Moreover, the complaint's vague and conclusory allegations of scienter fail to conform to Rule 8 for the same reason. If the facts alleged by CFI do not support an inference that Victaulic failed to mark its imported pipefittings, how could Victaulic have "knowingly" failed to pay marking duties?[4] Not surprisingly, CFI has not alleged any facts to suggest that anyone at

---

[4] *U.S. ex rel. Washington v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 452 (W.D. Pa. 2012) ("The False Claims Act defines "knowing" as including a defendant's "actual knowledge," "deliberate ignorance," or "reckless disregard" of the truth or falsity of information in the defendant's claim to the government. 31 U.S.C. § 3729(b). Further, "no proof of specific intent to defraud is required." *Id.* Congress specifically expressed "'its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence.'" *U.S. ex rel. Hochman v. Nackman,* 145 F.3d 1069, 1073 (9th Cir.1998) (quoting S. Rep. No. 99-345, at 7 (1986), U.S. Code Cong. & Admin. News 1986, pp. 5266, 5272).")

Victaulic actually knew, believed, or even suspected that its imported pipefittings were not properly marked. Nor has CFI identified the persons at Victaulic or its agents that were involved in making the allegedly false statements or omissions on the entry documents provided to CBP, or alleged whether those individuals were the same unidentified individuals that must have known that the imported pipefittings were unmarked. Instead CFI seems to be relying on a theory of "collective knowledge" among unidentified individuals, a theory that has been expressly rejected by numerous circuits, including the Third Circuit. *See U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007) (Noting that "scienter may not be based on a 'collective knowledge theory' by piecing together scraps of 'innocent' knowledge held by various corporate officials, even if those officials never had contact with each other or knew what others were doing in connection with a claim seeking government funds.") (quoting *U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010).

       3.    CFI fails to state a claim under the "reverse" false claims provision of the FCA, which imposes liability for knowing concealment or avoidance of an obligation. 31 U.S.C. § 3729(a)(7).  Count One alleges that Victaulic avoided and concealed its obligation to pay marking duties, which are in essence penalties for failing to properly mark imported pipefittings from foreign countries. CFI, however, fails to allege any facts in support of its conclusory allegation, and thus fails to allege facts showing that Victaulic had any obligation under the cited statute. Moreover, marking duties cannot form the basis for a claim under the FCA because they only provide "unassessed potential penalt[ies] for regulatory noncompliance." *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *see also U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657-58 (5th Cir. 2004) ("The reverse false claims act does not extend to the potential

or contingent obligations to pay the government fines or penalties which have not been levied or assessed.").

4. The Court should dismiss the complaint for the independent reason that it consists of conclusory allegations unsupported by any specific facts about the supposed false claims, much less the facts required to be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 758 (3d Cir. 2011) ("[P]laintiffs must plead FCA claims with particularity in accordance with Rule 9(b)."). Rule 9(b) requires CFI to allege the "who, what, when, where, and how" of an alleged fraud. *See Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 8 (D.D.C. 2010).

Given CFI's complete and total lack of connection to or knowledge of Victaulic, it is not surprising that CFI cannot supply the necessary details of Victaulic's alleged false statements. In this case, the complaint fails to allege the time or place of any false statements, the name or function of anyone who made such statements, or in what manner those statements were allegedly made. The sole specific allegation that CFI makes in relation to Victaulic is that the publicly available manifests of the ship purportedly carrying Victaulic's pipefitting shipments indicated that the pipefittings were loaded onto ships in China and Poland. Victaulic does not deny that it imports products from the foundries it owns and operates in Poland and China. But the manifest information that CFI relies on does not provide any information to support CFI's claim that Victaulic failed to mark its imported pipefittings. CFI's failure to meet the particularity requirement of 9(b) is fatal to its FCA claim. *See U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 308 (3d Cir. 2011) ("the question of whether a plaintiff, at the pleading stage, must identify representative examples of specific false claims that a defendant

made to the Government in order to plead an FCA claim properly is a requirement under the more particular pleading standards of Rule 9(b)").

## ARGUMENT

As detailed *infra*, CFI simply has no knowledge of Victaulic's policies, products, or operations. And without such knowledge, CFI cannot provide any independent or material information as a *qui tam* relator. At its core, CFI's complaint is nothing more than a series of conclusory allegations bootstrapped to a selection of publicly available and previously disclosed ship manifest data. And as this Circuit has long held, "section 3730(e)(4) [is] designed to preclude *qui tam* suits based on information that would have been *equally available to strangers* to the fraud transaction had they chosen to look for it as it was to the relator." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1155-56 (3d Cir. 1991) (emphasis added).

CFI's complaint then is based on the following flawed argument: (A) the Tariff Act requires that imported pipe fittings be marked with the country of origin, 19 U.S.C. § 1304(c); (B) public records show that Victaulic has imported approximately 83 million pounds of pipe fittings into the United States from China and Poland from 2003 through late 2012, Compl. ¶¶ 22-23; and therefore (C) Victaulic must have failed to "properly mark the vast bulk of its imported pipe fittings," Compl. ¶¶ 24, 5. But CFI's conclusion simply does not follow.

Indeed, nowhere in CFI's complaint are there any factual allegations in support of its conclusion that "Victaulic did not properly mark the vast bulk of its imported pipe fittings, including those imported on the dates shown in Exhibit A, in violation of the Tariff Act." Compl. ¶ 24. CFI claims – without any support – that "almost all of Victaulic's pipe fittings for sale in the U.S. are marked 'MADE IN U.S.A.' or have no country of origin information whatsoever." Compl. ¶ 24. CFI goes on to claim – again without support – that "[o]nly a miniscule fraction of

Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin, with an even smaller percentage bearing country of origin markings that are compliant with the Tariff Act." Compl. ¶ 25. But CFI offers nothing beyond these bare allegations. CFI does not explain why it concludes that "only a miniscule fraction of Victaulic's pipe fittings for sale in the U.S." are properly marked and its complaint fails to allege any facts to support such a conclusion.

Moreover, CFI's vague and conclusory allegations are practically impossible to evaluate since CFI has not alleged or indicated how many pipefittings Victaulic sold in any given year in the United States. As such, it is impossible to know whether the volume of imports identified by CFI is significant or not.

CFI's conclusory allegations regarding Victaulic's supposed false representations to U.S. CBP suffer from the same fatal errors. CFI fails to specify the time, place, author, or content of any alleged misrepresentation and instead simply claims that Victaulic commits this fraud by "falsifying its entry documents and otherwise concealing the foreign source of its pipe fittings." Compl. ¶ 26. Indeed, such falsification simply makes no sense once you realize that CFI's penultimate, speculative allegation that Victaulic was motivated to engage in this fraud because it could "import its foreign pipe fittings into the United States unmarked and undetected and then pass them off to consumers as made in America, thereby profiting handsomely from the higher prices that domestic pipe fittings command in the U.S. market" is equally devoid of any factual support. Compl. ¶ 5.

Not only does CFI fail to allege any facts in support of this conclusion, but there are no facts in its complaint to even suggest that domestic pipe fittings command higher prices or that Victaulic charges higher prices for its own domestic pipe fittings. Indeed, it is simply implausible for a company like Victaulic to risk importing 83 million pounds of unmarked material over ten

years – and risk being discovered by a random check by CBP at any point – all in an effort to present such materials as being made in the United States. In sum, CFI's complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted).

## I.   THE COMPLAINT MUST BE DISMISSED UNDER THE FCA'S PUBLIC DISCLOSURE BAR

The public disclosure bar of the FCA has a "generally broad scope" and is meant to "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *U.S. ex rel. Zizic v. Q2Administrators, LLC*, No. 12-2215, 2013 WL 4504765, at *4 (3d Cir. Aug. 26, 2013) (internal citations omitted). To that end, when a relator lacks "direct and independent knowledge of the information on which his allegations . . . [are] based, we conclude that he is not an original source of that information, and that the public disclosure bar precludes jurisdiction over his case." *Id.* at *11; *see, e.g.*, *U.S. ex rel. Schumann v. AstraZeneca PLC*, No. 03-5423, 2010 WL 4025904, at *6 (E.D. Pa. Oct. 13, 2010) ("When a relator's claims are based upon publicly disclosed allegations or transactions of fraud, his claims are barred by the FCA's public disclosure bar unless the relator qualifies as an 'original source.'"); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11cv371, 2013 WL 1189707 (E.D. Va. Mar. 21, 2013) (same).

> Specifically, the FCA provides that:
>
> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4).[5]

In this case, CFI's claims are based entirely on information publicly disclosed in governmental administrative reports and in the news media – and there is no evidence that CFI is or even could be an original source of the information. *See U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, No. 3:04cv1556, 2011 WL 3875987, at *7 (M.D. Pa. Sept. 1, 2011), *aff'd*, 490 F. App'x 502 (3d Cir. 2012) ("The court agrees with those courts from other circuits that have found information contained on publicly available websites can be public disclosures within the meaning of the FCA."). As such, CFI's claim is "a classic example of the "opportunistic" litigation that the public disclosure bar is designed to discourage." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1888 (2011).

Because CFI's complaint fails to comport with the requirements of 31 U.S.C. § 3730(e)(4), it should be dismissed under Fed. R. Civ. P. 12(b)(1). *See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). And because Victaulic's challenge goes "to the actual facts supporting [CFI's] qui tam claim, not merely how those facts were pled" the

---

[5] This portion of the FCA was amended in 2010 as part of the Patient Protection and Affordable Care Act, Pub.L. 111–148, 124 Stat. 119. *See Graham Cnty.*, 559 U.S. 280, 130 S.Ct. at 1400 n. 1 (acknowledging the amendment and explaining that the amendment was not retroactive). And while the 2010 amendment revised the particular language of the public disclosure bar – most courts have continued to engage in the same threshold analysis of whether a *qui tam* complaint was based in whole or part on a public disclosure – and have continued to dismiss *qui tam* claims like this one where the relator could not establish itself as an original source. *See, e.g.*, *Beauchamp*, 2013 WL 1189707 ("Here, it is clear that the public disclosure bar remains jurisdictional because it commands district courts to dismiss actions subject to the public disclosure bar, unless the Government specifically opposes the application of the bar."); *U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673-CIV, 2012 WL 1999527 (S.D. Fla. June 4, 2012) (explaining that "Congress eliminated an absolute jurisdictional bar in favor of a jurisdictional bar that can be lifted by government discretion," and noting that the "government would not oppose a subject matter jurisdiction dismissal if the Public Disclosure Bar was otherwise satisfied"); *U.S. ex rel. Osheroff v. HealthSpring, Inc.*, No. 3:10-1015, 2013 WL 1399344 (M.D. Tenn. Apr. 5, 2013) ("To prevent opportunistic relators, the False Claims Act places jurisdictional limitations on *qui tam* actions, including, so far as relevant here, the 'public disclosure bar'.").

court is "entitled to consider and weigh evidence outside the pleadings." *Id.*[6]  Moreover, CFI has

the "burden of establishing jurisdiction" – a burden that it cannot meet. *Id.*

A.      **The FCA Requires Relator to Show That the Constituent Elements of Its Claims Are Not Publicly Available**

The court must dismiss CFI's complaint because CFI's claims are "based upon"

information that is available to the public through "federal reports" and the "news media" – two

of the sources that trigger the public disclosure bar. 31 U.S.C. § 3730(e)(4). The Third Circuit

has held that "'based upon' means 'supported by' or 'substantially similar to,' so that the

relator's independent knowledge of the information is irrelevant." *U.S. ex rel. Mistick PBT v.*

*Hous. Auth. of City of Pittsburgh*, 186 F.3d 376, 386 (3d Cir. 1999). In order to determine which

facts have to be publicly disclosed in order to determine whether the public disclosure bar is

triggered, the Third Circuit relies on the following formula:

> If X + Y = Z, Z represents the allegation of fraud and X and Y represent its
> essential elements. In order to disclose the fraudulent transaction publicly, the
> combination of X and Y must be revealed, from which readers or listeners may
> infer Z, i.e., the conclusion that fraud has been committed.

*Zizic*, 2013 WL 4504765, at *5 (internal citations omitted); *see also U.S. ex rel. Springfield*

*Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). According to the above formula,

the public disclosure bar applies "if either Z (fraud) or both X (misrepresented facts) and Y (true

facts) are [publicly] disclosed by way of a listed source." *Springfield*, 14 F.3d at 654.

Facts are publicly disclosed for purposes of the bar when they are in the public domain

prior to the filing the action.  *See id.* Moreover, when facts are included in "federal reports" and

the "news media," broadly defined, they are considered to be publicly disclosed. *See, e.g.*,

*Schindler Elevator Corp.*, 131 S. Ct. at 1891 (noting that report and news media have a broad

---

[6] *See supra* note 3.

meaning which "suggest[s] that the public disclosure bar provides a broad sweep"); *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 300 (2010) (explaining that the "news media . . . describes a multitude of sources").

This Circuit has taken a similarly broad view of what sources of information qualify as news media. For example, the Third Circuit recently affirmed a district court decision that information in scholarly and scientific periodicals qualifies as news media under the FCA along with trade journals, educational materials, seminar papers, and instruction manuals. *Repko*, 2011 WL 3875987, at *7. The court found that information published in these sources as well as "publically available websites" can be considered publicly disclosed in the news media. *Id.*; *see also U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y. 2002) (finding that "information in scholarly or scientific periodicals" qualifies as "news media" information under the FCA, since it is "[n]o different from newspaper reports, scholarly and scientific authors [which] also disseminate information to the public in a periodic manner").

Moreover, the court explained that the same principles of access and discovery meant that information from comprehensive databases that are publicly available qualified as public disclosures. *Repko*, 2011 WL 3875987, at *7 (explaining that comprehensive online databases are public disclosures precisely because they "are easily accessible and any stranger to a fraud transaction could discover the relevant information on them."); *see also* John T. Boese, *Civil False Claims & Qui Tam Actions* 4-80 (2006) (noting that as the internet displaces traditional print sources the definition of "media" has expanded to encompasses these new sources of information).

**B.**    **All Material Elements of Relator's Claims Are Publicly Available**

Apart from CFI's unsupported conclusory allegations, all of the material factual elements of CFI's claim are publicly available in qualifying sources.

In this case, CFI's entire case is based on the publicly disclosed transactions involving Victaulic importing pipefittings into the U.S. from China and Poland. But simply presenting a record of Victaulic's imports certainly does not demonstrate that Victaulic has violated the FCA. In fact, all of the information that CFI has attached to its complaint – is information that is directly provided to the CBP – and available to the public through a wide range of publicly accessible databases.

For example, the availability of ship manifest data, is initially provided to the government by Victaulic directly, and then made publicly available through the media in the form of online trade journals. *See* 19 C.F.R. § 103.31(a) ("Accredited representatives of the press, including newspapers, commercial magazines, trade journals, and similar publications shall be permitted to examine vessel manifests and summary statistical reports of imports and exports and to copy therefrom for publication information and data subject to the following rules.").

**1.**    **The Allegedly Misrepresented Facts – the "X" – Are in the Public Domain**

In this case, the misrepresented facts – the "X" – alleged by CFI are Victaulic's supposedly false representations on their custom's entry forms that their imported pipefittings were in compliance with the Tariff Act and no marking duties were due. But CFI's only sources for the allegation that Victaulic made such representations are unsupported inferences drawn from public manifest data enclosed in Exhibit A to their complaint.

Indeed, the allegation that Victaulic failed to mark its foreign imports depends entirely upon data that is publicly available through a wide variety of trade publications on the internet,

including PIERS.[7] Even if these reports supported the inference that Victaulic improperly claimed that no marking duties were due – and they do not – the relevant information that CFI relies on is all publicly available on PIERS or one of its competing internet databases.

Moreover, another U.S. District Court recently found that shipping information found in PIERS and other similar reports is "publicly disclosed" in both the "news media" and "administrative reports." *See Staples*, 2013 WL 1192982, at *4 ("PIERS reports are readily accessible to the public on the PIERS website. While not a traditional news source, this site qualifies as 'news media' in light of the ample precedent in favor of broad construction of the channels of public disclosure listed in § 3730(e)(4)(A) . . . . The shipping information underlying the PIERS trade reports is also available to public subscribers through the CBP Automated Manifest System. 19 C.F.R. §§ 4.7, 103.31(a) (requiring CBP to provide vessel manifest information to the press). The allegedly misrepresented country of origin, here, therefore, was publicly disclosed in both the 'news media' and 'administrative report[s]' within the meaning of § 3730(e)(4)(A)."). In sum, there is no question that all of the factual information that CFI relies upon is publicly available.

## 2.    The Allegedly True Fact – the "Y" – Is Also in the Public Domain

The supposedly true fact – the "Y" – in this case is that Victaulic imported 83 million pounds of pipefittings from China and Poland that were not properly marked. Compl. ¶ 5. CFI claims that Victaulic's marking failure is obvious because "[o]nly a miniscule fraction of Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin" Compl. ¶ 25. But even if these allegations were sufficient to support CFI's conclusions – and they are not – the relevant factual allegations remain inadequate. CFI does not allege any facts other than

---

[7] *See supra*, p. 3 and note 3.

information about the volume of Victaulic's imports in support of its claim that a miniscule fraction of Victaulic's pipefittings for sale in the U.S. were properly marked.

In sum, CFI has failed to demonstrate that the allegedly misrepresented facts and the allegedly true facts upon which its claims are based were not already publicly disclosed.  *See Atkinson*, 473 F.3d at 514 (noting that the relator has the "burden of establishing jurisdiction"). Here, any member of the public could have gleaned from government reports and the news media all of the essential information of the alleged fraud. Because the essential elements that comprise CFI's claims have been publicly disclosed, CFI must prove that it is an "original source" with "independent" knowledge of the alleged fraud and whose knowledge "materially adds" to the "publicly disclosed allegations or transactions." *See* 31 U.S.C. § 3730(e)(4)(B). CFI's complaint fails to even allege – much less prove – this fact.

### 3.      Relator Has Not Proven That It is an Original Source

This court lacks jurisdiction over CFI's claims and must dismiss them because CFI has failed to prove that it is an original source with "*direct and independent knowledge* of the information on which the allegations are based." *Mistick PBT*, 186 F.3d at 388. Indeed, "if a relator's knowledge is based solely upon public disclosures within the meaning of § 3730(e)(4)(A), then the relator does not have direct and independent knowledge under § 3730(e)(4)(B)." *Atkinson*, 473 F.3d at 521.

Nor can CFI demonstrate that it has independent knowledge that materially adds to the publicly disclosed information upon which its claims are based. A relator has independent knowledge if "the knowledge is not dependent on public disclosure" and the information must have either "been voluntarily disclosed to the Government prior to the public disclosure" or it must "materially add to the information already publicly disclosed." *Beauchamp*, 2013 WL 1189707, at *11 (internal citations omitted). Moreover, "a relator cannot be said to have 'direct

and independent knowledge' of the information on which [its fraud] allegations are based [] if the relator has no direct and independent knowledge of the allegedly fraudulent statements." *Mistick PBT*, 186 F.3d at 389.

In this case, as detailed *supra*, the allegations regarding Victaulic's imports are all based on shipping data that is widely available from a number of trade publication websites on the internet. Moreover, CFI has not alleged any facts about its claims that Victaulic made false statements on its customs entry forms or the claim that Victaulic's failure to mark its imported pipefittings was driven by a desire to charge higher pricing for pipefittings that could be passed off as domestically manufactured. Indeed, these conclusory allegations remain unsupported by any facts in CFI's complaint. As such, CFI cannot be an original source because it failed to actually provide the information that an original source must provide. *See Zizic*, 2013 WL 4504765, at *7 ("The term 'original source means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action . . . which is based on the information.' § 3730(e)(4)(B). The word 'information' in turn refers to the facts on which the relator's allegations are based, not the facts on which the publicly disclosed allegations or transactions of fraud are based.").

None of CFI's allegations are sufficient to clear the public disclosure bar. And because CFI has failed to prove that it has direct and independent knowledge of either the allegedly misrepresented fact or the allegedly true fact – neither "X" nor "Y" – CFI has failed to meet its burden of proving jurisdiction and its complaint must be dismissed under Rule 12(b)(1).

## II.    THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6) BECAUSE IT FAILS TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT RELATOR IS ENTITLED TO RELIEF AS REQUIRED BY RULE 8(A)(2)

CFI fails to state a plausible claim for relief under Rule 8. In deciding a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations and draw all reasonable inferences in a plaintiff's favor, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal citations omitted). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555; *see also U.S. ex rel. Lobel v. Express Scripts, Inc.*, 351 F. App'x 778, 779-80 (3d Cir. 2009) ("Moreover, as the Supreme Court made clear last term: 'bare assertions,' 'legal conclusions,' and 'formulaic recitation[s] of the elements of a cause of action' are 'not entitled to the assumption of truth.'").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint lacking in plausibility must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Indeed, a complaint that offers "labels and conclusions" or "'naked assertion[s]" devoid of "further factual enhancement" is insufficient and "will not do." *Id.*

CFI's complaint asserts in conclusory terms that Victaulic "knowingly failed to properly mark the bulk of its imported pipe fittings with their country-of-origin." Compl. ¶ 3. CFI's complaint goes on to offer a series of conclusory assertions that "[o]nly a miniscule fraction of Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin" and that Victaulic falsifies "its entry documents and otherwise conceal[s] the foreign source of its pipe fittings." Compl. ¶¶ 25, 26. Moreover, CFI's claim that Victaulic was motivated to commit this fraud to "profit[] handsomely from the higher prices that domestic pipe fittings command in the

17

U.S. market" is equally unsupported by any facts. CFI fails to make any factual allegations in support of any of these conclusory statements. This failure to support the most basic premise of its claims – that Victaulic allegedly failed to mark its imported pipefittings – is fatal to CFI's complaint.

In fact, the only factual allegations in CFI's complaint deal with the amount of pipefittings that Victaulic has imported since 2003. Compl. ¶¶ 22, 23. But even these allegations are fundamentally flawed. A review of Exhibit A which purports to show Victaulic's volume of imported pipefittings from China and Poland from 2003 through late 2012 – simply provides basic manifest information (date, country of origin, port of import, weight, and the listed importer) – which as noted earlier is publicly available from CBP's database and third party trade publications. Nothing in Exhibit A indicates that the imported products were not properly marked. Indeed, CFI fails to allege that even if some of Victaulic's imported pipefittings were improperly marked, that anyone associated with Victaulic knowingly misrepresented their country of origin to CBP. This failure is independently fatal to CFI's complaint.

**A.**    **The Complaint Fails to Allege Facts Supporting a Claim That Victaulic Failed to Mark Pipefittings Made in China and Poland**

The complaint must be dismissed because it lacks factual allegations necessary to support a plausible inference that Victaulic falsified entry documents or otherwise concealed the foreign source of its pipefittings to the CBP. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Indeed, nowhere in CFI's complaint are there any factual allegations in support of its conclusion that "Victaulic did not properly mark the vast bulk of its imported pipe fittings, including those imported on the dates shown in Exhibit A, in violation of the Tariff Act." Compl. ¶ 24. CFI claims – without any support – that "almost all

of Victaulic's pipe fittings for sale in the U.S. are marked 'MADE IN U.S.A.' or have no country of origin information whatsoever." Compl. ¶ 24. CFI goes on to claim – again without support – that "[o]nly a miniscule fraction of Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin, with an even smaller percentage bearing country of origin markings that are complaint with the Tariff Act." Compl. ¶ 25. But CFI offers nothing beyond these bare allegations. CFI does not explain how it knows that "only a miniscule fraction of Victaulic's pipe fittings for sale in the U.S." are properly marked and its complaint fails to allege any facts to support such a conclusion.

In this case, the only factual content that CFI has pled relates to Exhibit A – which is simply a collection of ship manifest data provided by importers to CBP. As detailed *infra*, CBP provides this same data to a wide range of publicly accessible databases. As such, Exhibit A is relevant for two reasons: (1) it demonstrates that CFI's claims are based on information that was already in the public domain; and (2) it demonstrates the dearth of factual allegations in CFI's complaint. Even if the court were to assume that every single entry in Exhibit A were an accurate record of the weight of pipefittings that Victaulic imported from China and Poland, CFI's claim would still be fatally flawed because there is simply no context for the listed imports.

For example, at first glance the importation of 83 million pounds of pipefittings over a ten-year period appears to be significant. But without being able to put that information into context, CFI's invocation of such public information is meaningless. What if Victaulic sold 830 million pounds of pipefittings in the U.S. during that same ten-year period? If that were the case, even if CFI had alleged facts suggesting that only a "miniscule fraction" of Victaulic's pipefittings were marked as imported – which it has not – the allegation would still be meaningless.

19

Similarly, neither Exhibit A nor CFI's complaint provides any information on the actual number of pipefittings that Victaulic imported or produced domestically. And in this case, there is no question that the total weight of imported pipefittings does not indicate the number of imported pipefittings. Indeed, it is entirely plausible that Victaulic's alleged imports from Poland and China consisted of larger-scale or heavier pipefittings – and therefore constituted a much smaller number of fittings than what was produced in the United States. If that were the case, then CFI's conclusory allegation that "only a miniscule fraction" of Victaulic's pipefittings are properly marked fails to state a claim. But absent any such context the factual allegations that CFI has provided in relation to Victaulic's imports are "facially implausible." *Iqbal*, 556 U.S. at 678.

In short, CFI has tendered a series of naked assertions and failed to provide any further factual enhancement. As such CFI's unsupported speculation cannot satisfy Rule 8 and the complaint must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

### B.     Relator Fails to Plead Factual Allegations Making Plausible the Notion That Victaulic Had the Requisite Scienter

CFI's complaint fails for the independent reason that the allegations of scienter are based on a collective knowledge theory that has been rejected as a basis for FCA liability. *U.S. ex rel. Washington v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 452 (W.D. Pa. 2012) ("The Court does agree with EDMC that scienter may not be based on a 'collective knowledge' theory 'by piecing together scraps of 'innocent' knowledge held by various corporate officials, even if those officials never had contact with each other or knew what others were doing in connection'") (internal citations omitted). To establish scienter under the FCA, a relator must show that defendant "knowingly" concealed an obligation to the government. 31 U.S.C. § 3729(a)(7).

Under the FCA, for a defendant to act "knowingly" it must have "'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard' of the truth or falsity of information in the defendant's claim." *Hefner*, 495 F.3d at 109; *see also U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) (same).

In this case, CFI has not alleged that any individual associated with Victaulic made any statement about the markings of its imported pipefitting knowing it to be false or with any reason to know such a statement would be false. Indeed, the complaint does not name a single Victaulic employee or representative by name or position. Such an omission is fatal to CFI's claim – especially when the "collective knowledge" theory of scienter had been deemed unacceptable. *See, e.g.*, *Educ. Mgmt. Corp.*, 871 F. Supp. 2d at 452; *Sci. Applications Int'l*, 626 F.3d at 1274.

Moreover, even if CFI attempted to identify individuals associated with Victaulic with the requisite knowledge to establish liability under the FCA, those individuals would each have to be aware of: (1) the lack of markings or improper markings on Victaulic's imported pipefittings; and (2) that Victaulic misrepresented its compliance with the Tariff Act to CBP or concealed its failure to comply with the Tariff Act from CBP. CFI fails to provide any factual basis to conclude that any individual at Victaulic would be aware of both alleged facts. In fact, CFI simply makes a conclusory assertion that Victaulic "commits this fraud on the U.S. Government by, among other things, falsifying its entry documents and otherwise concealing the foreign source of its pipe fittings such that CBP will not detect the company's fraud." Compl. ¶ 26. Not only are such conclusory allegations insufficient as a matter of law under *Twombly* and *Iqbal*, but they fail to even identify a single employee who could possess the requisite scienter.

CFI's failure to plead facts demonstrating scienter is fatal to its claim and the complaint should therefore be dismissed.

## III.   RELATORS CLAIM FOR MARKING DUTIES DOES NOT STATE A CLAIM UNDER THE FCA

Count I is defective on its face as a matter of pleading and as a matter of law. CFI alleges that Victaulic avoided and "knowingly concealed an obligation" to pay marking duties, Compl. ¶¶ 31-33, which are fines that Victaulic *might owe* if it imported products that were marked with the incorrect countries of origin.

Indeed, even though CFI refers to the Tariff Act, which is focused on the alleged mismarking of the country of origin on Victaulic's imported pipefittings; CFI fails to make any factual allegations regarding the marking of Victaulic's imported pipefittings. Instead, CFI makes a series of conclusory and speculative allegations about Victaulic pipefittings "not bearing country or origin markings that are compliant with the Tariff Act." Compl. ¶ 25.

But absent any actual factual allegations – CFI's complaint fails to allege that Victaulic had any obligation to pay any penalties under the Tariff Act. Moreover, "an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim." *Hoyte*, 518 F.3d at 67; *see also Bain*, 386 F.3d at 657-58 ("The reverse false claims act does not extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed."). In short, CFI's claims about marking duties that Victaulic owes – are without any factual support. Moreover, such duties are potential penalties for making a false statement, not established duties that are avoided by the false statement. This statute, therefore, cannot serve as a basis for Victaulic's alleged FCA liability.

## IV.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT FAILS TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(B)

The complaint should be dismissed under Rule 12(b)(6) for the additional reason that it fails to plead FCA claims with the particularity required by Rule 9(b).

A.    **FCA is a Fraud Statute and Requires Pleading Fraud With Particularity**

[P]laintiffs must plead FCA claims with particularity in accordance with Rule 9(b)."

*Pilecki-Simko*, 443 F. App'x at 758; *see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, No.

CIV. A. 94-7316, 2000 WL 1207162, at *10 (E.D. Pa. Aug. 24, 2000) ("[A]llegations of direct

violations of the FCA must be pleaded with particularity as required by Rule 9(b).")); *U.S. ex rel.*

*Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 118 (W.D. Pa. 2006) ("Federal Rule of Civil

Procedure 9(b) is applicable to the Plaintiffs' claims made under the FCA as the application of

Rule 9(b) to the False Claims Act is proper.").

A party alleging fraud under the FCA "must state with particularity the circumstances

constituting fraud or mistake." Fed R. Civ. P. 9(b). The circumstances that must be pleaded with

specificity are "matters such as the 'time, place, and contents of the *false* representations,' such

representations being the *element* of fraud about which the rule is chiefly concerned." *U.S. ex rel.*

*Totten v. Bombardier Corp.*, 286 F.3d 542, 552 (D.C. Cir. 2002); *see also* 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (3d ed.) ("In point of fact, the

reference to 'circumstances' in the rule is to matters such as the time, place, and contents of the

false representations or omissions . . . ."). In sum, Rule 9(b) requires CFI to allege the "who,

what, when, where, and how" of an alleged fraud.  *See Boone*, 684 F. Supp. 2d at 8.

B.    **The Complaint Fails to Plead With Particularity the Substance of the Fraud**

CFI's complaint fails to provide any factual allegations identifying the "who, what, when,

where, and how" of the alleged fraud.

1.    **Complaint Fails to Specify the Contents of the Allegedly False Statements**

At the heart of CFI's complaint are the allegedly false statements in CBP entry forms, but

the complaint failed to specifically allege the contents of any statements on those relevant forms.

Indeed, the complaint simply offers a general conclusory claim that Victaulic commits this fraud by "falsifying its entry documents and otherwise concealing the foreign source of its pipe fittings." Compl. ¶ 26. But the complaint fails to describe or even identify a single example of a false statement by Victaulic in a customs form.

Instead of identifying the alleged false statements in Victaulic's CBP forms, the complaint references shipping data that allegedly show Victaulic's imports of pipefittings from China and Poland between 2003 and late 2012. Compl. ¶ 23. But as noted *supra*, even if all the listed shipping information in Exhibit A is accurate, the information listed does not allege any facts showing the contents of the particular statements made to CBP concerning the markings on Victaulic's imported pipefittings. And just as importantly – none of the information in the complaint or in Exhibit A provides facts about what makes any statements that Victaulic might have made to CBP false.

The above failures demonstrate that CFI is engaging in little more than a "fishing expedition" when it presents reams of publicly available data that any random person could access – and then claiming without support that such data invariably means that fraud was committed. Rule 9(b)'s "requirement of specificity" exists precisely to "prevent[] fraud claims" from serving as "a fishing expedition to obtain material facts by way of the discovery process." *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2013 WL 4049728, at *2 (M.D. Pa. Aug. 9, 2013). While such antics may be how CFI conducts "confidential research and analysis related to potential customs fraud" – they fall far short of what is required under the FCA. Comp. ¶ 7; *see Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (explaining that under the FCA the "heightened pleading standard" of 9(b) "is also designed to prevent 'fishing expeditions'").

###### 2.    Complaint Fails to Specify Who Made the Allegedly False Statements or Otherwise Engaged in Alleged Fraud

Indeed, in violation of the requirements of Rule 9(b), nowhere in the complaint does CFI specify who engaged in the alleged scheme to not mark or improperly mark Victaulic's imported pipefittings. *Bartlett*, 234 F.R.D. at 124; *see also U.S. ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 889 (8th Cir. 2003) (court dismissed claims pursuant to Rule 9(b) for failure to specifically identify defendants participating in alleged actions). The complaint simply alleges that Victaulic commits this fraud by "falsifying its entry documents and otherwise concealing the foreign source of its pipe fittings." Compl. ¶ 26. But CFI fails to allege any facts about who submits these forms or to whom these forms are submitted. In fact, CFI does not even provide the name of Victaulic's shipping agent, much less the name of an individual that was involved in completing or submitting the CBP forms at issue. Because "Rule 9(b) is applicable to defendants in an alleged fraud," CFI's failure to specify who from Victaulic was involved in the alleged fraud is fatal to CFI's complaint. *Bartlett*, 234 F.R.D. at 124.

###### C.    Complaint Fails to Specify When, Where, or How the Alleged False Statements Were Made

CFI's sparse factual allegations regarding Victaulic's supposed false representations to CBP suffer from the same fatal errors. CFI fails to specify the time, place, author, or content of any alleged misrepresentation and instead simply claims that Victaulic commits this fraud by "falsifying its entry documents and otherwise concealing the foreign source of its pipe fittings." Compl. ¶ 26. "In considering the potential numerosity of claims allegedly made over several years, the Court recognizes the need for balance between Rule 8 and pleading fraud under Rule 9(b) and the fact that every alleged claim need not be plead with specificity . . . but the Court also finds it fatal to that pleading that the Plaintiffs failed to produce even one specific claim by the Defendants that was submitted to the Government as an evidentiary example of the claims

submitted in order to inject some precision into the Amended Complaint." *Bartlett*, 234 F.R.D. at 122 (internal citations omitted).

In this case, as detailed *supra*, CFI has not provided any factual allegations in support of its FCA claims. Yet, CFI has submitted a long list of public ship manifest data in an effort to bolster its claims. But none of the data in Exhibit A provides any information on whether, when, where, or how Victaulic allegedly made false representations to CBP. Given the dearth of factual allegations in CFI's complaint, requiring CFI to provide some information about the false statements that Victaulic allegedly made is well within the bounds of Rule 9(b).

Without such information, CFI's complaint consists of little more than a list, taken directly from a publicly available database like PIERS, claiming to show Victaulic's shipping manifests for pipefittings, with no facts showing that pipefittings were unmarked or mismarked in violation of the Tariff Act. The complaint, therefore, asks the court to assume and accept a series of conclusory assertions that Victaulic falsified entry forms and otherwise deceived CBP for each of the shipments listed in Exhibit A over a ten year period. But the predicate for an FCA violation is the submission of an allegedly "false record or statement" to the government, and a complaint like CFI's, which is completely missing any facts showing that defendant actually submitted such a record cannot satisfy the requirements of Rule 9(b) and must be dismissed.

Finally, in light of CFI's "clearly frivolous" claim, Victaulic also asks the court to allow it to recover all reasonable attorney's fees and expenses. Indeed, when a *qui tam* plaintiff's allegations are "bereft of any objective factual support" as CFI's claims are here, the FCA authorizes an award of attorney's fees to the defendant. *See* 31 U.S.C. § 3730(d)(4); *see, e.g.*, *Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("an award of attorneys' fees to defendants" is "fully justified"); *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 528 F. Supp. 2d 533, 543 (E.D.

Pa. 2007) (explaining that the "court has jurisdiction under § 3730(d)(4) to award attorney fees and expenses" to prevailing defendants if the *qui tam* plaintiff's claims "were clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment").

## CONCLUSION

Based on the foregoing, Defendant Victaulic Company respectfully requests that the Court dismiss CFI's complaint with prejudice.

Dated: October 10, 2013                    Respectfully submitted,


  /s/ Brian R. Tipton
Brian R. Tipton (Bar No. 84457)
Florio, Perrucci, Steinhardt & Fader
235 Broubalow Way
Phillipsburg, New Jersey O8865
Telephone: 908-454-8300
Facsimile: 908-454-5827
btipton@fpslawfirm.com

Thomas C. Hill (admitted *pro hac vice*)
Jeetander T. Dulani (admitted *pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
thomas.hill@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Counsel for Victaulic Company*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing Motion to Dismiss and Memorandum in Support thereof was served on all counsel of record via the Court's electronic filing system on October 10, 2013.

  /s/ Brian R. Tipton_____
Brian R. Tipton

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>*ex rel.* CUSTOMS FRAUD )<br>INVESTIGATIONS, LLC, )<br>)<br>      **Plaintiff, Relator** )<br>)<br>  **vs.** )<br>)<br>VICTAULIC COMPANY, )<br>)<br>      **Defendant.** )<br> | **Civil Action No. 13-2983** |

### <u>ORDER</u>

**AND NOW,** this ___ day of _____, 2013, upon consideration of Victaulic's Motion to Dismiss Plaintiff's Complaint (Docket No. 1), Plaintiffs' Answer to Victaulic's Motion to Dismiss Plaintiff's Complaint (Docket No. ___), and Defendant's Reply (Docket No. ____), it is ORDERED that Defendant's Motion will be GRANTED and Plaintiffs' Complaint is dismissed with prejudice.

                          BY THE COURT:

                          _____
                          MARY A. MCLAUGHLIN, J.