# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES *ex rel.* CUSTOMS FRAUD INVESTIGATIONS, LLC,** )<br>)<br>)<br>**Plaintiff, Relator,** )<br>)<br>**v.** )<br>)<br>**VICTAULIC COMPANY,** )<br>)<br>**Defendant.** )<br>) | **Civil Action No. 13-2983** |

## REPLY IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT VICTAULIC COMPANY

Thomas C. Hill (admitted *pro hac vice*)
Jeetander T. Dulani (admitted *pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C.  20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
thomas.hill@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

Brian R. Tipton (Bar No. 84457)
Florio, Perrucci, Steinhardt & Fader
235 Broubalow Way
Phillipsburg, New Jersey O8865
Telephone: 908-454-8300
Facsimile: 908-454-5827
btipton@fpsflawfirm.com

*Counsel for Victaulic Company*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.      CFI'S COMPLAINT MUST BE DISMISSED UNDER THE PUBLIC
        DISCLOSURE BAR ................................................................................... 1

        A.      Jurisdictional or Not, the Public Disclosure Bar Requires Dismissal ..................... 1

        B.      CFI's Claims Are Based on Publicly Disclosed Information ................................. 3

        C.      CFI's Investigation Does Not Add Any Facts and Does Not Transform
                It into an Original Source ........................................................................ 5

II.     CFI FAILS TO STATE A CLAIM UNDER THE FALSE CLAIMS ACT ..................... 7

III.    CFI'S COMPLAINT FAILS TO SATISFY RULE 8(A)(2) .............................. 11

IV.     CFI HAS NOT PLED FRAUD WITH PARTICULARITY AS REQUIRED
        BY RULE 9(B) ................................................................................... 13

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Am. Textile Mfrs. v. The Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999)................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................11,12,13

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519
(1983)................................................................................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................11,12,13

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984), *cert. denied*, 407
U.S. 1054 (1985)..............................................................................................1,12

*Commonwealth of Pa. ex rel. v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) ...........1,12

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) .........................................12

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280
(2010)...............................................................................................................3,10

*Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61 (D.C. Cir. 2008)...........................7,10,11

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939 (1997)......................3,10

*In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...........14-15

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198 (3d Cir. 2002).............14

*Kennard v. Comstock Res., Inc.*, 363 F.3d 1039 (10th Cir. 2004), *cert. denied*, 545 U.S.
1139 (2005)........................................................................................................7

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .................................11

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d
Cir. 2003) .........................................................................................................13

*Oncale v. Sunflower Offshore Servs., Inc.*, 523 U.S. 75 (1998) ...................................10

*Pentax Corp. v. Robison*, 125 F.3d 1457 (Fed. Cir. 1997), *amended on reh'g by*, 135 F.3d
760 (Fed. Cir. 1998)........................................................................................8-9

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, No. 10 Civ 7504, 2013 WL 4441509
(S.D.N.Y. Aug. 16, 2103) ................................................................................2

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885 (2011)..........................5

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) ........................................................................................14

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991) ...........................1,12

*U.S. v. Educ. Mgmnt. Corp.*, 871 F. Supp. 2d 433 (W.D. Pa. 2012) ...........................................13

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351 (E.D. Pa. 2002), *aff'd on other grounds*, 473 F. 3d 506 (3d Cir. 2007).......................................................................15

*U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007).............................6,7

*U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004)...........................................8,10

*U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825 (E.D. Va. 2013) ..........................................................................................................................................2

*U.S. ex rel. Doe v. Staples, Inc.*, No. 08-846RJL, 2013 WL 1192982 (D.D.C. Mar. 22, 2013) ..........................................................................................................................................5

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2013 WL 2303768 (N.D. Ga. May 17, 2013) ............................................................................................................2

*U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346 (W.D. Mo. June 12, 2013) ......................................................................................................................2

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754 (3d Cir. 2011)..........................11,13

*U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 557 F. Supp. 2d 522 (M.D. Pa. 2008) ......................14

*U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 3:04cv1556, 2011 WL 3875987 (M.D. Pa. Sept. 1, 2011), *aff'd*, 490 F. App'x 502 (3d Cir. 2012) ...............................................5,15

*U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673, 2012 WL 1999527 (S.D. Fla. June 4, 2012) ......................................................................................................................................2-3

*U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125 (E.D. Pa. 2012) .......................14

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994)....................4,6

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.S. v. Prudential Ins. Co.*, 944 F.2d 1149 (3d Cir. 1991).................................................................................................................4,6

*U.S. ex rel. Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:10-CV-322, 2013 WL 3912571 (E.D. Tenn. July 29, 2013) ..........................................................................2

## STATUTES, REGULATIONS & OTHER DOCUMENTS

Fed. R. Civ. P. 8 ...................................................................................................1,11,13

Fed. R. Civ. P. 8 (A)(2) ..................................................................................................11

Fed. R. Civ. P. 9 .............................................................................................................13

Fed. R. Civ. P. 9(b) ..............................................................................................13,14,15

Fed. R. Civ. P. 12(b)(6) ..................................................................................................12

19 C.F.R. § 103.31(d) .......................................................................................................5

19 U.S.C. § 1304 ............................................................................................................8,9

19 U.S.C. § 1304(i) .........................................................................................................11

19 U.S.C. § 1592 ............................................................................................................8,9

19 U.S.C. § 1592(a) ..........................................................................................................9

31 U.S.C. § 3729 *et seq.* .......................................................................................... *passim*

31 U.S.C. § 3730(e)(4) ................................................................................................1,2,7

31 U.S.C. § 3730(e)(4)(A) ................................................................................................5

S. Rep. No. 110-507, 2008 WL 4415147 (Sept. 25, 2008)..............................................9

S. Rep. No. 111-10, *reprinted in*, 2009 U.S.C.C.A.N. 430 ............................................9

U.S. Const. art. VI, cl. 2...................................................................................................9

## INTRODUCTION

CFI's Opposition to Defendant Victaulic Company's Motion to Dismiss (Dkt. 18, "Opp") seeks to cure the fatal deficiencies in its Complaint, by improperly introducing un-pled facts and allegations and attaching a declaration and exhibits to its brief. But, such tactics have long been held to be improper in the Third Circuit. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex. rel Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir.1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)); *See also Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991). As such, none of CFI's attached materials should be considered by the court. Even if the court were to consider CFI's attached exhibits - and it should not – the information that CFI provides simply confirms that CFI's allegations are based on information that is publicly disclosed - and its *qui tam* Complaint is therefore jurisdictionally barred. Moreover, both case law and recent legislative history indicate that CFI's claim for marking duties does not state a claim under the FCA as a matter of law. Finally, CFI's Complaint is both logically flawed and based on conclusory allegations that fail to satisfy the pleading requirements of Rules 8 and 9(b). As such, CFI's Complaint must be dismissed with prejudice.

## ARGUMENT

I. **CFI'S COMPLAINT MUST BE DISMISSED UNDER THE PUBLIC DISCLOSURE BAR**

The Complaint must be dismissed for lack of jurisdiction under 31 U.S.C. § 3730(e)(4) because the material elements of CFI's claims were "publicly disclosed" and CFI is not an "original source." CFI's arguments to the contrary are without merit.

### A.   Jurisdictional or Not, the Public Disclosure Bar Requires Dismissal

After constructing its entire Complaint on the quicksand of publicly available sources, CFI is now attempting to fabricate a false foundation by claiming that the Public Disclosure Bar

is no longer jurisdictional. But, CFI fails to engage any of the reasoning of the courts that have found that the Public Disclosure remains jurisdictional. "It is clear from the FCA's history and from the text of the 2010 amendments that the public disclosure bar is jurisdictional." *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 838 (E.D. Va. 2013). The amended public disclosure bar states: "The court *shall dismiss an action or claim under this section*, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . ." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). While the word "jurisdiction" has been removed from the statute, the public disclosure bar clearly remains jurisdictional because it "commands district courts to dismiss actions" unless the Government opposes such a dismissal. *Beauchamp*, 933 F. Supp. 2d at 839.

Moreover, even the courts that have concluded that the 2010 amendments to the FCA modified the jurisdictional nature of the Public Disclosure bar nonetheless have engaged in the same functional analysis and dismissed cases like CFI's. *See, e.g., Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, No. 10 Civ. 7504, 2013 WL 4441509, at *9-10, *15 (S.D.N.Y. Aug. 16, 2013) (finding that public disclosure bar is no longer jurisdictional but still "requires dismissal" of the case); *U.S. ex rel. Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:10-CV-322, 2013 WL 3912571, at *7 n.6, *15 (E.D. Tenn. July 29, 2013) (same). None of the cases cited by CFI allow it to escape this conclusion.[1]

In fact, Congress simply changed what was an "absolute" jurisdictional bar into a jurisdictional bar "that can be lifted by government discretion." *U.S. ex rel. Sanchez v.*

---

[1]  CFI relies on *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2013 WL 2303768 (N.D. Ga. May 17, 2013) which states that the claims are governed by the pre-amendment version of the public disclosure bar. The court also clearly states that the public disclosure bar is a basis for dismissal. Similarly, in *U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346 (W.D. Mo. June 12, 2013), the court found that while the public disclosure bar is no longer described as jurisdictional, it still required dismissal.

*Abuabara*, No. 10-61673, 2012 WL 1999527, at *2 (S.D. Fla. June 4, 2012). In *Sanchez*, the

court explained that a representative of the U.S. Attorney's Office confirmed that the

government would not oppose a *subject matter jurisdiction dismissal* if the public disclosure bar

otherwise applied. *Id*. at *2. In essence, the changes to the Public Disclosure Bar give the United

States, the true party in interest, a veto over dismissal. In light of this change, it is obvious why

the relator would prefer the court not to consider the fact that the DOJ not only refused to

intervene, but did so less than two months after the complaint was filed. Indeed, under the new

amendments, the DOJ could have informed the court that it opposed dismissal once Victaulic

filed its motion to dismiss. DOJ has not. Contrary to CFI's claims, DOJ's decision to forgo

intervention in this case is a strong indicator that CFI has no basis for bringing this *qui tam* suit.

Moreover, even if this court were to conclude that the public disclosure bar was no longer

jurisdictional, the bar would still apply in this case because the 2010 amended provisions of the

FCA only apply to conduct that occurred after the statute's enactment. *See e.g. , Graham Cnty.*

*Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 1400 n.1 (2010)

(explaining that the amendment to the public disclosure bar was not retroactive); *Hughes*

*Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 952 (1997) (A previous 1986 amendment of

the FCA did not apply to "conduct completed before its enactment" and therefore, "under the

relevant 1982 version of the FCA, the District Court was obliged to dismiss this action."). In this

case, the pre-2010 jurisdictional bar would still apply because almost all of the conduct alleged

by CFI occurred before the 2010 amendment was enacted.

### B.    CFI's Claims Are Based on Publicly Disclosed Information

Under the public disclosure bar, allegations or transactions have been publicly disclosed

and the public disclosure bar applies to a Complaint where the essential elements of a fraud, X

(alleged misrepresented facts) and Y (true facts) are in the public domain. *U.S. ex rel.*

*Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994) ("Thus, a *qui tam* action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain."). The public disclosure bar is designed to "preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1155-56 (3d Cir. 1991).

In this case, the relator has absolutely no connection to either the defendant or the underlying transactions. Indeed, the relator has never been: an employee at Victaulic; a customer of Victaulic; a competitor of Victaulic; an agent of Victaulic; or a supplier of Victaulic. As such, the relator adds nothing to what is in the "public domain." In sum, the relator did nothing more than troll through publically available information, the same information that is available to US Customs and its investigators, or, for that matter, anyone with access to a computer.

Indeed, the information about Victaulic's growing imports from China and Poland, the required marking of such imports, and the characteristics of such markings were all publically available through online databases such as Zepol and PIERS, and public websites like eBay. Relator's trolling through these websites did not provide any independent or material knowledge that Customs did not have – especially since Zepol, like other online databases, provides Import data "from the Automated Commercial Environment (ACE) of U.S. Customs."[2] U.S. Customs explains that a "number of private sector media services that are permitted by the privacy statute, 19 CFR 103.31 (d), to collect manifest *data* at every port of entry."[3] According to U.S. Customs, "Reporters [like Zepol and PIERS] collect and publish names of *importers* from vessel manifest

---

[2] *See* http://www.zepol.com/Products/TradeIQ/TradeIQ.aspx
[3] *See* https://help.cbp.gov/app/answers/detail/a_id/319/kw/import%20data/suggested/1 .

*data.*"[4] Moreover, Zepol also provides regular news updates and analysis to the public.[5] As such, it is no surprise that the court in *Doe v. Staples* found that PIERS Reports and it competitors are readily accessible to the public and qualify as news media and administrative reports under Section 3730(e)(4)(A). *U.S. ex rel. Doe v. Staples, Inc.*, No. 08-846RJL, 2013 WL 1192982, at *4 (D.D.C. Mar. 22, 2013).

Indeed, anyone who was interested in Victaulic's marking compliance "would be able to discover such information on these public sources, and would not need to be involved in the transactions to see them." *U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 3:04cv1556, 2011 WL 3875987, at *8 (M.D. Pa. Sept. 1, 2011), *aff'd*, 490 F. App'x 502 (3d Cir. 2012). [6] CFI's claim is "a classic example of the 'opportunistic' litigation that the public disclosure bar is designed to discourage." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885, 1888 (2011).

### C.     CFI's Investigation Does Not Add Any Facts and Does Not Transform It into an Original Source

CFI's claims that it is an "original source" because it "contributed sufficient independent knowledge" through its "multi-faceted investigation." Opp at 6, 27. CFI's investigation (which again, for the most part, was not alleged in CFI's Complaint, but rather in its Opposition) consisted of two efforts:  First, CFI accessed ship manifest data from Zepol.com, a publicly

---

[4] *Id.*("Among the companies that provide this information service are the Journal of Commerce's PIERS database ").

[5] *See* http://www.zepol.com/BLOG/category/News.aspx.

[6] CFI attempts to distinguish Zepol from other public websites that the court in *Repko* found to be public sources (Guidestar, the Foundation Center, Standard & Poor's, and Bloomberg Professional). CFI incorrectly claims that these websites were public sources because they provide some form of news synthesis or editorial content. But that was not the analysis that the court relied on in *Repko*. Victaulic is not aware of any court relying on such a standard in an FCA case. The court in *Repko* found that even though these websites "are not traditional news sources, they serve the same purpose as newspapers or radio broadcasts, to provide the general public with access to information. They are easily accessible and any stranger to a fraud transaction could discover the relevant information on them." *Repko*, 2011 WL 3875987, at *7.  Indeed, the information provided by these websites was financial, and much of it reflecting the financial transactions that were reported in Form 990's – documents that defendants filed on a regular basis with the IRS.  The websites in *Repko* provided the relator and any other member of the public with an easy way to search for information that was already in the public domain – which is exactly what happened here.

available web database.  Opp at 6. Zepol like PIERS and other online databases provides import data **"**from the Automated Commercial Environment (ACE) of U.S. Customs.**"** [7] CFI claims that **"**[o]nly someone who has worked with customs import data over an extended period would know how to manipulate and interpret ship manifest data.**"** Opp at 7.  Zepol, however, states that its online database is **"**fast, user-friendly**"** and **"**makes finding the information you want easy.**"** [8]

But even if that were not the case, there is no basis for CFI's claim that its expertise is what allowed it to bring this action. While expertise may be helpful, it cannot be the basis for a *qui tam* suit, especially if "the material elements of fraud are publicly available" even if those elements are not "readily comprehensible to nonexperts."  *Springfield*, 14 F.3d at 655. CFI claims that its investigation provided it with "background information" which enabled it to "understand the significance" of Victaulic's publicly disclosed import transactions, but none of the materials that it relies on demonstrate that CFI had any "substantive information about the particular fraud" that it alleged. *Stinson*, 944 F.2d at 1149.

CFI's second effort, detailed in its Opposition but not alleged in its Complaint, apparently consisted of reviewing "221 unique eBay listings for 'new' iron and steel Victaulic pipe fittings." Opp at 8. There is no question that the information posted on eBay is readily accessible by the public and is in the public domain. As such, CFI's admitted reliance on the public information available on eBay precludes it from original source status. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 522 (3d Cir. 2007) (Finding that a relator was not an original

---

[7] *See* http://www.zepol.com/Products/TradeIQ/TradeIQ.aspx

[8] *See id.*

source even though its knowledge of an element of fraud was "based, in whole or part, on information available in the public domain that is not a § 3730(e)(4)(A) public disclosure").[9]

Finally, CFI likens its independent investigations to the investigation in *Kennard v. Comstock Resources, Inc.,* where a relator's independent investigation qualified him as an original source under the FCA. The problem is that unlike CFI, the relator in *Kennard* "did not refer to, examine, or rely on any public records. He relied exclusively on his own personal, private royalty records and statements from Comstock and other oil companies." *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1046 (10th Cir. 2004). Indeed, that is why the Third Circuit noted that "courts must be mindful of suits based only on secondhand information, speculation, background information or collateral research...." *Atkinson*, 473 F.3d at 523 (internal citations omitted). In *Atkinson*, the Third Circuit found that the relator was not an original source, because the transactions at issue could have been discovered by "[a]ny member of the public" who "could have gone to a county recording office." *Atkinson*, 473 F.3d at 523. The same is equally true of relator here.

## II.   CFI FAILS TO STATE A CLAIM UNDER THE FALSE CLAIMS ACT

CFI's allegations about a failure to pay marking duties cannot give rise to liability under the reverse false claims provision and must be dismissed for the following reasons:

1.   Victaulic explained in its opening brief (Dkt. 17 at 22), that CFI impermissibly based alleged liability under the False Claims Act on "unassessed potential penalt[ies] for regulatory noncompliance." *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *see also U.S.*

---

[9]   CFI claims for the first time in its opposition that its allegations that Victaulic mismarked or failed to mark its imported pipe fittings were based on its eBay analysis. Even if the court was to consider this information – and it should not – dismissal would still be required. CFI's search of eBay listings simply does not provide any support for its allegations and inferences about Victaulic. For example the photos relied upon by relator on eBay: (1) may represent genuine or counterfeit Victaulic parts; (2) may show older parts; (3) may not show marking locations; (4) may show parts that are by their very nature manufactured in the U.S. or used to be manufactured in the U.S.; and (5) may well show stock or other photos that are not photos of the actual part that is being sold.

*ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004) ("The reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed."). CFI has not and cannot point to any case law suggesting otherwise. Instead, CFI's only response has been to invoke recent legislative history on the amendment of the FCA. But as explained *infra*, the legislative history: (a) does not support CFI's position; (b) does not reflect Congressional intent; and (c) the amended provisions are inapplicable to conduct that allegedly occurred prior to the amendment as is the case here.

2.   Indeed, a review of legislative history that CFI relies upon demonstrates that Congress did not reaffirm that "marking duties specifically – are recoverable through the FCA." Opp. at 35.  There is no mention of marking duties in either of the Senate reports that CFI relies upon. Rather both reports state that "customs duties for mismarking country of origin" are recoverable under the FCA. Such duties are recoverable under 19 U.S.C. §1592 (and separate and distinct from the ad valorem marking duties under 19 U.S.C. §1304) - and typically arise when goods are produced in one country and then transshipped to another country before being imported to the United States under a false country of origin to avoid higher tariff duties.

The seminal case in this area is *Pentax Corp. v. Robison*, 125 F.3d 1457, 1463 (Fed. Cir. 1997), *amended on reh'g by*, 135 F.3d 760 (Fed.Cir.1998).  In *Pentax*, the camera manufacturer disclosed to Customs that it had been importing cameras that it claimed were made in Hong Kong, even though production had shifted to China. *Pentax*, 135 F.3d at 762. The Federal Circuit explained that there is a difference between tariff based customs duties that arise from mismarking the country of origin for imported goods which are recoverable under 19 U.S.C. Section 1592 and ad valorem mismarking duties imposed by 19 U.S.C. 1304 :

> [19 U.S.C.] Section 1592(a) prohibits misrepresentations resulting from misconduct—
> fraud, gross negligence, or negligence. Thus, the actions that violate § 1592(a) are the

acts of fraudulently or negligently mismarking imported goods . . . We hold that the 10 percent *ad valorem* mismarking duties do not fall into this category.

*Pentax,* 125 F. 3d at 1463.

The Sixth Circuit confronted a similar transshipment issue in *American Textile* when the defendants were manufacturing goods in China and transshipping them to Hong Kong and Macau, and falsely listing Hong Kong and Macau as the country of origin. *Am. Textile Mfrs. Inst. v. The Limited, Inc.*, 190 F.3d 729, 731 (6th Cir. 1999) ("*ATMI*"). But the issue in *ATMI* was whether falsifying the country of origin in order to avoid tariff-based customs duties, which violated 19 U.S.C. § 1592, was actionable as a reverse false claim under the FCA. *Id*. at 732. The Sixth Circuit refused to find defendants liable under the FCA for violating 19 U.S.C. § 1592, because the Section 1592 liability was deemed to be contingent. *Id*. at 741 (Rejecting four of the six counts - including the claim under 19 U.S.C. §1592 - that ATMI brought against the defendants under the FCA because the claims relied on "the theory of conti[n]gent obligations."). The Sixth Circuit also rejected the ad valorem marking duties claims under the FCA, but it relied on the theory outlined in *Pentax* – namely that those duties were derivative duties that arose from the Section 1592 violation. *Id*. at 741-42.  In response to the *ATMI* decision, the Senate Judiciary Committee Reports ("Senate Reports") sought to make it clear that the committee believed that the Sixth Circuit was wrong about its theory of contingent obligations for tariff based customs duties – which are not the same as marking duties. *See e.g.*, S. Rep. No. 110-507, 2008 WL 4415147, at *18 (Sept. 25, 2008); S. Rep. No. 111-10, at n.10, *reprinted in* 2009 U.S.C.C.A.N. 430 (2009) ("The Committee originally included this language in S. 2041 in response to the decision in [*ATMI*] where the Sixth Circuit Court of Appeals narrowly defined the term ''obligation'' to apply reverse false claims to only fixed obligations and dismissing a claim for false statements made by importers to avoid paying customs duties.").

3.   Even if the Senate intended to modify the FCA to cover marking duties as opposed to tariff-based customs duties – and they did not – the legislative history is not a dispositive measure of Congressional intent. The Supreme Court recently explained in *Graham*, "[t]he Constitution gives legal effect to the 'Laws' Congress enacts, Art. VI, cl. 2, not the objectives its Members aimed to achieve in voting for them." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 302 (2010) (J. Scalia concurring in part and concurring in the opinion); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998). Indeed, "it is utterly impossible to discern what the Members of Congress intended except to the extent that intent is manifested in the only remnant of 'history' that bears the unanimous endorsement of the majority in each House: the text of the enrolled bill that became law." *Graham*, 559 U.S. at 302.

4.   Indeed, even if Congressional intent was dispositive – and it is not- here CFI would still have failed to state a claim under the False Claims Act because the amended provisions of the FCA only apply to conduct that occurred after the statute's enactment. *See Hughes Aircraft*, 520 U.S. at 952. The Court in *Hughes* held that a prior 1986 amendment of the FCA did not apply to "conduct completed before its enactment" and therefore "under the relevant 1982 version of the FCA, the District Court was obliged to dismiss this action…." *Id.* The same is true here.  CFI's complaint focused on conduct that occurred well before the 2009 amendments to the FCA, and therefore the handful of circuit court cases, *Hoyte* and *Bain,* that have addressed contingent payments under the reverse False Claims Act remain good law. It is no answer that the marking duty statute states that the duty "shall not be construed to be penal." Opp at 35 (quoting 19 U.S.C. § 1304(i)).  In *Hoyte*, the court found that the FCA imposes liability for the knowing avoidance of "an obligation to pay or transmit money or property to the

Government.**"** *Hoyte*, 518 F.3d at 66. It does not matter whether such an obligation is penal or

not - rather that a requirement for regulatory compliance that may potentially result in a fee for

noncompliance is not sufficient to form the basis of liability under the FCA. *Id*. at 66-67. CFI's

claim must be therefore be dismissed with prejudice.

## III.    CFI'S COMPLAINT FAILS TO SATISFY RULE 8(A)(2)

For all of the reasons set forth in Victaulic's opening brief (Dkt. 17 at 17-22), the

Complaint must be dismissed for failure to satisfy Rule 8, which requires that CFI allege

"sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678. "However, the court need not accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns

Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the standard requires plaintiffs to allege

"more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678

(citing *Twombly,* 550 U.S. at 556.); *see U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x

754, 759-60 (3d Cir. 2011) (same).

Here, CFI does almost nothing to defend its actual Complaint as drafted and filed.

Instead, CFI improperly attempts to fill the factual gaps in its Complaint, by presenting new

allegations and facts with a declaration from Rebecca Woodings, a principal at CFI, along with a

series of lengthy spreadsheets and tables that allegedly reflect CFI's "complex and unique

investigation."  Opp at 2. This circuit has made it clear that courts "do not consider after-the-fact

allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)."

*Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007). "It is axiomatic that the

complaint may not be amended by the briefs in opposition to a motion to dismiss." *Zimmerman*, 836 F.2d at 181 (quoting *Car Carriers*, 745 F.2d at 1107); *See also Unger*, 928 F.2d at 1400.

Indeed, even if the court was to consider these new allegations and documents – and it should not – they cannot cure the Complaint's fatal deficiencies. Specifically, the Complaint fails to allege facts that plausibly support two necessary elements of CFI's claim: first, that Victaulic failed to mark its imported pipefittings from China and Poland; and second, that Victaulic acted with the requisite scienter. In the end, CFI's complaint lacks "factual matter" that plausibly supports these requirements, and the Complaint must be dismissed. *See Iqbal*, 556 U.S. at 678.

In this case, CFI claims without support – that its allegation that "Victaulic has imported huge quantities of pipe fittings from its foreign factories, but has not marked those pipe fittings with country of origin" – is a "factual allegation" entitled to the presumption of truth. Opp at 31. CFI is wrong. Indeed, if CFI's position was correct, *Twombly* and its progeny would no longer have any meaning. CFI's Complaint simply asserts that "Victaulic did not properly mark the vast bulk of its imported pipe fittings, including those imported on the dates shown in Exhibit A, in violation of the Tariff Act." Compl. ¶ 24. This allegation is a legal conclusion that is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

The only factual allegations that CFI has made and can make, is that based on publically available ship manifest data Victaulic imported 83 million pounds of pipe fittings from China and Poland. Complaint ¶¶ 22-23. CFI has not and cannot make any factual allegations about the lack of markings on Victaulic's imported pipe fittings, nor can it make any such allegations about Victaulic's alleged violation of the marking statute. District courts must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*

459 U.S. 519, 528 n.17 (1983)).  And, while the pleading standard does not require CFI to set

forth every piece of evidence in its case up front, CFI is required to include enough factual

content to state a plausible claim.

CFI correctly notes that some district courts in the Third Circuit have held that

"[p]ursuant to Fed. R. Civ. P. 9(b), scienter may be pled 'generally.'"  *United States v. Educ.*

*Mgmt. Corp.*, 871 F. Supp. 2d 433, 453 (W.D. Pa. 2012).  But "generally" is a relative term.

Both the Supreme Court and the Third Circuit have explained that, "Rule 9 merely excuses a

party from pleading discriminatory intent under an elevated pleading standard. It does not give

him license to evade the less rigid – though still operative – strictures of Rule 8." *Iqbal*, 556 U.S.

at 686-87; *see also  Pilecki-Simko*, 443 F. App'x at 760 (same). Unlike the plaintiff in *Education*

*Management,* whose "Complaint also contains specific examples that make the allegation

plausible", CFI's complaint is devoid of any plausible allegation of scienter.  *Educ. Mgmt. Corp.*,

871 F. Supp. 2d at 453; *see also Iqbal*, 556 U.S. at 678.  In short, CFI's failure to nudge its

"claims across the line from conceivable to plausible, [means its] complaint must be dismissed."

*Twombly*, 550 U.S. at 570.

## IV.    CFI HAS NOT PLED FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(B)

As Victaulic set forth in its opening brief (at 22-27), the Complaint should also be

dismissed because it fails to allege the content of the alleged false statements, who made them, or

when, where, or how they were made. CFI claims that it does not need to meet this standard

because "[t]he purpose of Rule 9(b) is to provide notice." Opp at 37 quoting *Morganroth &*

*Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003). CFI

fails to mention that, in the very next sentence, the court in *Morganroth* found the plaintiff's

fraud allegations to be sufficient only "because they allege specific actions" of the defendants." *Id*. CFI's Complaint fails this test.

The simple fact is that the Rule 9(b) standard "requires a description of the 'who, what, when, where and how' of the events at issue." *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 143-44 (E.D. Pa. 2002) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). The block quote from *Spay v. CVS Caremark* on which CFI relies in its Opposition is inapplicable here because the focus of the court's analysis was whether a plaintiff that identified "over 49,000 problematic claims and describe[d], with great detail, a large number of them" could allege that a defendants' "alleged violations of the FCA were a national company policy." *Spay*, 913 F. Supp. 2d at174.

Not surprisingly, the court in *Spay* found that "Rule 9(b) does not require date, time, and place allegations, provided that the plaintiff gives the defendants other means of precision and substantiation." *Id.* (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). Suffice to say, identifying more than 49,000 problematic claims and describing a great deal of them in detail, provides "other means of precision and substantiation." *Id.* CFI, in contrast, has not identified any date, time, and place allegations in its Complaint, and it has certainly failed to provide any other means of precision and substantiation of its claims.

Rule 9(b)'s heightened pleading requirements recognize that defendants accused of fraud face increased financial and reputational risks. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *see also U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 557 F. Supp. 2d 522, 526 (M.D. Pa. 2008) (The purpose of Rule 9(b) is to "provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior."). These

14

risks are made apparent by the treble damage and penalty provisions of the FCA. As such, Rule 9(b) recognizes that the pleading burden on the plaintiff needs to be higher to compel and allow a defendant to adequately defend against fraud allegations. Here, CFI has completely failed to meet its burden of alleging fraud in its Complaint to support its hunch that fraud has been committed.

CFI seeks to justify its failure to meet the requirements of Rule 9(b) by again claiming that this district has explained that Rule 9(b)'s standard should be relaxed when certain factual information is "peculiarly within" a defendant's control. Opp at 39-40.  But, CFI again fails to mention that this district and the Third Circuit have made clear that "even under a nonrestrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 407 (E.D. Pa. 2002), *aff'd on other grounds*, 473 F.3d 506 (3d Cir. 2007).  CFI's complaint fails to meet either of the above requirements. In sum, CFI's Complaint must be dismissed because CFI makes no serious attempt to address the Complaint's failure to satisfy Rule 9(b).

## CONCLUSION

Based on the foregoing, Defendant Victaulic Company respectfully requests that the Court dismiss CFI's complaint with prejudice.

Dated:  November 4, 2013                    Respectfully submitted,

                                             /s/ Jeetander T. Dulani
                                            Thomas C. Hill (admitted *pro hac vice)*
                                            Jeetander T. Dulani (admitted *pro hac vice*)
                                            Pillsbury Winthrop Shaw Pittman LLP
                                            2300 N Street, N.W.
                                            Washington, D.C.  20037
                                            Telephone:  (202) 663-8000
                                            Facsimile:  (202) 663-8007
                                            thomas.hill@pillsburylaw.com
                                            jeetander.dulani@pillsburylaw.com

                                            Brian R. Tipton (Bar No. 84457)
                                            Florio, Perrucci, Steinhardt & Fader
                                            235 Broubalow Way
                                            Phillipsburg, New Jersey O8865
                                            Telephone: 908-454-8300
                                            Facsimile: 908-454-5827
                                            btipton@fpsflawfirm.com

                                            *Counsel for Victaulic Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Motion to Dismiss and Memorandum in Support

thereof was served on all counsel of record via the Court's electronic filing system on November

4, 2013.

/s/_____
Jeetander T. Dulani

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **CUSTOMS FRAUD INVESTIGATIONS, LLC,** )<br>)<br>)<br>)<br>**Plaintiff, Relator** )<br>)<br>**vs.** )<br>)<br>**VICTAULIC COMPANY,** )<br>)<br>**Defendant.** ) | **Civil Action No. 13-2983** |

## ORDER

**AND NOW,** this ___ day of _____, 2013, upon consideration of Victaulic's Motion to Dismiss Plaintiff's Complaint (Docket No. 1), Plaintiffs' Answer to Victaulic's Motion to Dismiss Plaintiff's Complaint (Docket No. ___), and Defendant's Reply (Docket No. ____), it is ORDERED that Defendant's Motion will be GRANTED and Plaintiffs' Complaint is dismissed with prejudice.

BY THE COURT:

_____
MARY A. MCLAUGHLIN, J.