IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES *ex rel*. CUSTOMS FRAUD INVESTIGATIONS, LLC | |
| Plaintiff/Relator, | Civil Action No. 13-2983 |
| v. | |
| VICTAULIC COMPANY | |
| Defendant. | |

**PLAINTIFF'S [PROPOSED] SURREPLY
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Suzanne Ilene Schiller
MANKO, GOLD, KATCHER, FOX LLP
401 City Ave., Suite 500
Bala Cynwyd, PA 19004
(484) 430-2359
sschiller@mgkflaw.com

Jonathan K. Tycko (admitted pro hac vice)
Anna C. Haac (admitted pro hac vice)
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
jtycko@tzlegal.com
ahaac@tzlegal.com

*Counsel for Relator Customs Fraud Investigations, LLC*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................................ iii

**INTRODUCTION** ........................................................................................................................... 1

**ARGUMENT** .................................................................................................................................. 2

    I.    The FERA Definition Of "Obligation" Applies To The Vast Majority Of Conduct At Issue In This Case ....................................................................................................... 2

    II.   The Post-FERA Version Of The Reverse-False-Claims Provision Unquestionably Covers Marking Duties .......................................................................................................... 3

    III.  The Court Should Defer Ruling On Whether The Pre-FERA Version Of The Reverse-False-Claims Provision Covers Marking Duties................................................ 6

**CONCLUSION** ............................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Textile Mfrs. Inst. v. The Limited, Inc.*
   190 F.3d 729 (6th Cir. 1999) ............................................................................... 5, 6, 7

*Pentax Corp. v. Robison*
   125 F.3d 1457(Fed. Cir. 1997) ................................................................................. 5

*U.S. ex rel. Haungyan Import & Export Corp. v. Nature's Farm Products*
   370 F. Supp.2d 993 (N.D. Cal. 2005) ....................................................................... 7

*U.S. ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*
   CV-F-91-194 OWW, 1992 WL 795477 (E.D. Cal. May 4, 1992) ............................ 7

**STATUTES**

19 U.S.C § 1592 ................................................................................................. 1, 4, 5, 6
19 U.S.C. § 1304 ....................................................................................................... passim
31 U.S.C. § 3729(b)(3) ...................................................................................................... 3
Fraud Enforcement and Recovery Act of 2009 ......................................................... 1, 2

**OTHER AUTHORITIES**

S. Rep. No. 110-507 (2008) .......................................................................................... 1, 3
S. Rep. No. 111-10 (2009) ............................................................................................. 5, 7

**INTRODUCTION**

Relator Customs Fraud Investigations, LLC ("CFI") submits this Surreply to make three points.

1. Victaulic argues that cases decided prior to the Fraud Enforcement and Recovery Act of 2009 ("FERA") govern the question of whether marking duties are "obligations" within the meaning of the reverse-false-claims provision of the False Claims Act ("FCA"), because at least some of the imports at issue in this case occurred prior to passage of FERA. But, in fact, the vast majority of Victaulic's imports occurred *after* the effective date of FERA, and thus the FERA definition of "obligation" applies to most of the conduct at issue here.

2. The legislative history of FERA indicates an intent to cover "customs duties for mismarking country of origin." S. Rep. No. 110-507, at 18, 34 (2008). Victaulic offers a convoluted argument that this did *not* mean marking duties under 19 U.S.C. § 1304, but rather meant tariff-based customs duties recoverable under a different statute, 19 U.S.C. § 1592. This is incorrect, as a proper understanding of 19 U.S.C § 1592 plainly demonstrates.

3. The Court should defer ruling on the issue of whether marking duties were "obligations" prior to the effective date of FERA. That issue applies only to a small portion of the imports at issue in this case, and has not been adequately briefed by the parties. Accordingly, in the interest of judicial efficiency, the Court should reserve that issue or, in the alternative, should require the parties to submit additional briefing before ruling.

**ARGUMENT**

I.  **The FERA Definition Of "Obligation" Applies To The Vast Majority Of Conduct At Issue In This Case**

In arguing that marking duties are "penalties" that are not recoverable under the reverse-false-claims provision of the FCA, Victaulic relies on case law decided prior to 2009. FERA, however, added an explicit definition of the term "obligation" to the FCA, as used in the reverse-false-claims provision. The FERA definition of "obligation" applies to conduct occurring on or after May 20, 2009.[1] *See* Fraud Enforcement and Recovery Act of 2009, PL 111-21, § 4(f), 123 Stat 1617, 1625 (May 20, 2009). Here, the vast majority of Victaulic's fraudulent conduct occurred after May 20, 2009. The following chart, derived from Exhibit A of the Complaint, shows the weight (in kilograms) of Victaulic's imports from China and Poland:

| Year | China | Poland | Combined China and Poland | Total | Percentage |
|---|---|---|---|---|---|
| 2003 | 190,460 | 283,477 | 473,937 | | |
| 2004 | 21,992 | N/A | 21,992 | | |
| 2005 | 140,169 | N/A | 140,169 | | |
| 2006 | 51,529 | N/A | 51,529 | 8,535,403 | **23%** |
| 2007 | 1,006,442 | N/A | 1,006,442 | | |
| 2008 | 4,304,949 | 6,842 | 4,311,791 | | |
| Jan. 1-May 19, 2009 | 2,513,928 | 15,615 | 2,529,543 | | |
| May 20-Dec. 31, 2009 | 3,368,911 | 317,957 | 3,686,868 | | |
| 2010 | 7,204,713 | 1,374,712 | 8,579,425 | | |
| 2011 | 8,029,375 | 880,267 | 8,909,642 | 29,194,810 | **77%** |
| 2012 | 6,338,879 | 1,609,088 | 7,947,967 | | |
| Jan 1-9, 2013 | 70,908 | N/A | 70,908 | | |
| **Total** | 33,242,255 | 4,487,958 | 37,730,213 | 37,730,213 | **100%** |

As this chart demonstrates, at least 77% of Victaulic's imports from China and Poland occurred *after* FERA's effective date. The actual percentage is almost certainly higher because

---

[1]  The Court should also hold that the FERA definition of "obligation" applies to conduct occurring *prior* to May 20, 2009. For the reasons set forth in Part III of this brief, however, Relator suggests that the Court reserve ruling on this issue at this time.

2

the information contained in Exhibit A of the Complaint is only through January 9, 2013. Accordingly, the vast majority of the conduct at issue in this case is governed by the post-FERA version of the FCA, including FERA's explicit definition of "obligation."

## II. The Post-FERA Version Of The Reverse-False-Claims Provision Unquestionably Covers Marking Duties

A plain language reading of the relevant statutory language shows that marking duties are recoverable under the FCA. The FCA defines "obligation" as "an established duty, whether or not fixed, arising . . . from statute or regulation." 31 U.S.C. § 3729(b)(3). Here, the duty to pay marking duties is one "arising . . . from statute," namely, the Tariff Act, 19 U.S.C. § 1304(i). So, the only other question is whether marking duties are "an established duty, whether or not fixed." That question is answered by the plain language of the marking duties statute itself, which states that such "[a]dditional duties for failure to mark" are "10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed as penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause." 19 U.S.C. § 1304(i). Thus, the marking duties owed are determined via simple calculation, are *due automatically* upon importation, and *cannot be reduced or forgiven*. It would be hard to imagine a duty to pay money that is more clearly "established" by statute. Thus, the plain language of the relevant statutes shows that marking duties are "obligations" under the FCA.

Even assuming, *arguendo*, that the statutory language leaves any ambiguity, that ambiguity is resolved by the legislative history of FERA. As Victaulic concedes (*see* Def.'s Reply Br. at 8), the relevant Senate report states that, under the FERA amendment, "customs duties for mismarking country of origin" fall within the definition of "obligation," and thus are recoverable under the FCA. S. Rep. No. 110-507, at 18, 34 (2008). The *only* customs duties that can become owed "for mismarking country of origin" are marking duties under 19 U.S.C.

3

§ 1304(i). Thus, marking duties are what the Senate had in mind when it used that phrase. Victaulic attempts to confuse this issue by suggesting that "customs duties for mismarking country of origin" was a reference to what Victaulic mistakenly calls "duties" recoverable under 19 U.S.C. § 1592, in cases in which an importer has engaged in transshipment. *See* Def.'s Reply Br. at 8-9. That argument, however, is demonstrably wrong.

19 U.S.C. § 1592 does not establish any customs duties; rather, it is an enforcement mechanism. Entitled "[p]enalties for fraud, gross negligence, and negligence," the statute allows the Customs Service (now known as Customs and Border Patrol, or "CBP") to initiate an administrative procedure to impose penalties on an importer for false statements or omissions in import-related documents, statements, or other information. The amount of penalties CBP can impose depends on where the importer's false statements or omissions fall on the fraud-gross negligence-negligence spectrum, and whether the importer made a "prior disclosure" to CBP. *See* 19 U.S.C. § 1592(c). For example, if CBP finds gross negligence, and the importer has not made a prior disclosure, then the penalties CBP may impose are capped at "(A) the lesser of (i) the domestic value of the merchandise, or (ii) four times the lawful duties, taxes, and fees of which the United States is or may be deprived, or, (B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise." 19 U.S.C. § 1592(c)(2)(A). Thus, although the amount of duties avoided by the importer's false statements or omissions is potentially relevant to the amount of penalties CBP imposes, 19 U.S.C. § 1592 does not itself create any customs duties.

With that as background, consider the transshipment scenario posed by Victaulic. Transshipment means that an importer moves goods from their country of origin ("Country A") through an intermediary country ("Country B") before bringing those goods to the United States.

4

In this example, the importer may be liable for three different bundles of money.  First, the importer may owe marking duties under 19 U.S.C. § 1304(i) if it marked the wrong country of origin on the goods.  Second, if the tariff for the goods is higher with respect to Country A than with respect to Country B, the importer may owe some additional amount of tariff duties.  This additional amount is not owed "for mismarking;" rather, it is simply the additional tariff duties owed because Country A was the true country of origin.  In other words, it is the amount the importer would owe even if the importer had not mismarked.[2]  Third, the importer may be subject to penalties, but *not* "customs duties," under 19 U.S.C. § 1592(c), if the importer acted fraudulently or negligently.  Returning to the relevant phrase from the Senate report, only one of these three potential bundles of money—the marking duties—is a form of "customs duties for mismarking country of origin."  Thus, the only logical conclusion is that the Senate report referred to marking duties.

This conclusion is bolstered by the fact that one of the stated purposes of the FERA amendment was to overrule *Am. Textile Mfrs. Inst. v. The Limited, Inc.*, 190 F.3d 729, 731 (6th Cir. 1999) ("*ATMI*").  *See* S. Rep. No. 111-10, at n.10 (2009).  Victaulic's argument, however, would mean that nothing in *ATMI* was actually overruled.  *ATMI* involved claims under the reverse-false-claims provision of the FCA for both statutory penalties under various provisions (including 19 U.S.C. § 1592) and marking duties.  The Sixth Circuit held that "contingent obligations" were not within the scope of the reverse-false-claims provision, and defined

---

[2] The Federal Circuit's narrow holding in *Pentax Corp. v. Robison*, 125 F.3d 1457, 1460 (Fed. Cir. 1997), recognizes this distinction.  *Pentax* turned on whether "duties assessed pursuant to section 1304(f) are duties of which the government has been deprived '*as a result of a violation of*' section 1592(a)."  *Id*.  Under a but-for causation analysis, *Pentax* reasoned that because a violation of 19 U.S.C. § 1592 based on an underlying failure to mark actually creates the obligation to pay marking duties, the Government cannot be said to have been deprived of these duties "as a result of a violation of section 1592(a)" in the same way that it is deprived of tariff duties owed independent of the mismarking.  *Id*. at 1463.

"contingent obligations" as "those that will arise only after the exercise of discretion by government actors."  190 F.3d at 738.  The court gave as "[e]xamples of contingent obligations. . . those arising from civil and criminal penalties that impose monetary fines after a finding of wrongdoing."  *Id*.  The court then easily held that penalties under 19 U.S.C. § 1592 (and other similar penalty statutes upon which the relator had relied) were "contingent" in that sense, and thus held that such penalties could not be recovered under the FCA.  *Id*. at 741.  The court then separately turned to marking duties—which it viewed as "present[ing] the most difficulty"—and held that these *also* could not be recovered under the FCA.  *Id*. at 741-42.

If the FERA definition of "obligation" overruled *ATMI*, then the current definition of "obligation" must include either marking duties under 19 U.S.C. § 1304, or penalties under 19 U.S.C. § 1592, or both.  Given the language chosen for the definition, and the legislative history discussed above, the "overruling" of *ATMI* means, at a minimum, that marking duties are "obligations."  And if penalties under 19 U.S.C. § 1592 are within the meaning of "obligation," then certainly marking duties are as well.  Thus, the legislative intent to overrule *ATMI* strongly supports the conclusion that marking duties are within the FERA definition of "obligation."

In sum, that marking duties are within the current definition of "obligation" flows from: (a) the plain language of that definition and the marking duty statute; (b) the legislative intent that "customs duties for mismarking country of origin" fall within that definition; and (c) the legislative intent to overrule the Sixth Circuit's decision in *ATMI*.  Thus, the Complaint states a claim for recovery of unpaid marking duties with respect to imports on or after May 20, 2009.

### III.    The Court Should Defer Ruling On Whether The Pre-FERA Version Of The Reverse-False-Claims Provision Covers Marking Duties

What remains is the question of whether marking duties are recoverable with respect to imports before May 20, 2009.  In the Sixth Circuit, the answer would be "no," because of the

holding of *ATMI*. That holding, however, was never adopted by the Third Circuit. Even the panel that decided *ATMI* recognized that of the various issues presented to it, the question of whether marking duties were "obligations" within the meaning of the FCA "present[ed] the most difficulty." 190 F.3d at 741. And the Sixth Circuit's conclusion that all "contingent" obligations were outside the scope of the FCA was not universally accepted. For example, that distinction had been rejected by *U.S. ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, CV-F-91-194 OWW, 1992 WL 795477 (E.D. Cal. May 4, 1992), which held that "[a]ny false reports submitted by defendants to the Government with the effect that payment of forfeitures or fines to the Government were avoided, constitute false claims within the meaning of the reverse false claims provision of the Act." *See also U.S. ex rel. Haungyan Import & Export Corp. v. Nature's Farm Products*, 370 F. Supp.2d 993, 1001-01 (N.D. Cal. 2005) (questioning the reasoning of *ATMI*). Moreover, the Senate committee report accompanying the final version of FERA expressed the view that the FERA definition of "obligation" had, in fact, been the proper one "since the passage of the 1986 Amendments." S. Rep. No. 111-10, at 14 (2009).

Relator submits that *ATMI* was wrongly decided with respect to the marking duties question. The Court, however, should defer ruling on whether the pre-FERA version of the FCA covers marking duties. That issue is relevant solely to pre-FERA imports (*i.e.*, prior to May 20, 2009), which represent only a small portion—likely no more than 20%—of those at issue here. Thus, the Court could deny the motion to dismiss, and permit the case to move forward, while reserving the question of pre-FERA imports. This would make sense from a judicial efficiency perspective because the question of whether marking duties could be recovered under the FCA pre-FERA is a potentially complicated issue that has not been briefed by the parties. In contrast, Victaulic's motion to dismiss raises numerous other issues that have now been fully briefed. If

the Court denies the motion to dismiss, and in so doing rejects all of Victaulic's other arguments, this case may well resolve itself without further judicial intervention.  Or, if the case continues to be litigated, Victaulic could raise the issue of pre-FERA imports in a subsequent motion.  In the alternative, if the Court wishes to address the issue of pre-FERA imports now, then Relator respectfully suggests that the Court require supplemental briefing focused on that issue so that the Court can address it with the benefit of input from the parties.

## CONCLUSION

For all the reasons stated above, and in CFI's previously-filed Opposition brief, the Court should deny Victaulic's Motion to Dismiss.

Dated: November 20, 2013                                    Respectfully submitted,

 /s/ Suzanne Ilene Schiller
Suzanne Ilene Schiller
MANKO, GOLD, KATCHER, FOX LLP
401 City Ave., Suite 500
Bala Cynwyd, PA 19004
(484) 430-2359
tkantorczyk@mgkflaw.com

Jonathan K. Tycko (*admitted pro hac vice*)
Anna C. Haac (*admitted pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (fax)
jtycko@tzlegal.com
ahaac@tzlegal.com

*Counsel for Relator*
*Customs Fraud Investigations, LLC*