## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CUSTOMS FRAUD** | **: CIVIL ACTION** |
| **INVESTIGATIONS, LLC, *et al.*** | : |
| | : |
| **v.** | **: NO. 13-2983** |
| | : |
| **VICTAULIC COMPANY** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                    **September 9, 2019**

Unlike the discretion afforded district courts in reviewing an award of fees to prevailing parties in civil rights cases, Congress requires we award reasonable attorney's fees and expenses to parties who recover money for the United States under the False Claims Act. While courts may discount the amount of reimbursed hours invested in a False Claims Act case after specific findings of unreasonable time invested on clearly frivolous or arguably unsuccessful results compared to the initial scope of the case based on the judge's experience with counsel, we are not aware of courts denying reimbursement for reasonable and adequately described hours and expenses invested in developing a claim before discovery even when the initial fact basis is abandoned but the initial theory proves to have arguable merit in discovery resulting in a sizable settlement approved by the Department of Justice before trial. As today, a business may decide to pay $600,000 to settle a False Claims Act lawsuit when it views its potential liability exceeding a billion dollars. But its perspective of getting a deal does not allow us to deny a fee award of reasonable rates based on comparables in this District for adequately described hours. We also today award established undisputed reasonable rates for work performed by a Supreme Court advocate entirely before the Supreme Court in successfully defeating a certiorari petition. As agreed by the relator, we deny fees and expenses for travel and a press release.

## I.    Facts

Customs Fraud Investigations, LLC suspected Victaulic Company failed to pay marking duties to the United States by knowingly importing unmarked foreign-made pipe fittings without telling United States Customs.  In August 2012, Customs Fraud began a "product study" on Victaulic by examining photos of 221 eBay listings of Victaulic products and purchasing nine products from eBay with only one of those products made and marked in China.  It looked at each product individually to determine a marking with a country of origin.  The product study led Customs Fraud to believe Victaulic failed to mark its products with country of origin in a visible location when the product is in use and failed to use proper methods of marking under 19 U.S.C. § 1304(i).

### *Counsel's efforts to proceed into discovery.*

Although Customs Fraud did not produce a retainer agreement, the parties do not dispute Customs Fraud retained attorneys with the law firm Tycko & Zavareei LLP ("Tycko") located in Washington, D.C., on or around October 19, 2012.[1]  The parties also do not dispute Customs Fraud agreed to pay Tycko a fee awarded by the Court if successful if obtaining recovery.  Tycko investigated Customs Fraud's theories, including holding meetings with Customs Fraud's principals, reviewing documents, analysis, and conducting research on relevant legal issues.  Tycko also invested time preparing a disclosure statement for the Department of Justice and researched the "best circuit to bring" this case.[2]

By May 2, 2013, Customs Fraud began looking for potential local counsel in this District.  Tycko asked Manko Gold Katcher Fox LLP ("Manko Gold") to assist as local counsel at some unknown point.  On May 24, 2013, attorneys at Manko Gold began recording time in reviewing a draft complaint.  It then assisted in representing Customs Fraud.  In total, it billed $372,519 in fees

2

and incurred costs of $15,2014.90. We do not have a retainer agreement under Pennsylvania law with either of the law firms.  We do not know what Customs Fraud agreed to pay.  We do not know whether Customs Fraud paid Manko Gold, if anything.

Customs Fraud then filed this case under seal on May 30, 2013, alleging Victaulic knowingly imported foreign-made pipe fittings lacking a mark indicating their country of origin, violating the Tariff Act and False Claims Act.  Customs Fraud sought to recover marking duties which could, with treble damages, exceed $920 million along with penalties of $14.3 million on pipe-fitting products imported from China and Poland from 2003 until 2012.  It also alleged ongoing conduct which Victaulic evaluated as a potential risk of another approximate $847 million in liability.  Victaulic viewed the United States' possible recovery exceeded $1.760 billion.  Tycko and Manko Gold invested 201.3 hours into investigating the case based, in some part, on the eBay product study of photographs and nine purchases.

On August 7, 2013, the United States declined to intervene.  Customs Fraud then unsealed and served the Complaint. Victaulic moved to dismiss the Complaint.  Customs Fraud conducted research, drafted and filed briefs opposing the motion to dismiss, and prepared for a hearing.  After extensive oral argument, Judge McLaughlin found the thirty-five-paragraph complaint to be "bare bones" and dismissed the complaint with prejudice.[3]  Customs Fraud moved for leave to amend with an attached first amended Complaint detailing facts which it argued overcame Judge McLaughlin's concerns.  Judge McLaughlin denied Customs Fraud's Motion for leave finding it untimely and Customs Fraud could not state a reverse False Claims Act claim based on the failure to pay marking duties because they are too attenuated and contingent to qualify as obligations to pay money covered by the False Claims Act.

3

Customs Fraud appealed the denial of its Motion to amend and dismissal with prejudice. It met with attorneys from the Department of Justice and Customs. On appeal, our Court of Appeals reversed Judge McLaughlin's denial of leave to amend. Our Court of Appeals found Customs Fraud's proposed first amended Complaint included "details that address at least some of the concerns that the District Court had expressed in its opinion. Of particular import, the [first amended Complaint] details the rationale behind [Customs Fraud's] investigation of Victaulic and discusses the methodology [Customs Fraud] used to develop its claims."[4] The Court of Appeals described Customs Fraud's investigation as involving "a multifaceted analysis ...consisting of...analysis of shipping manifest data [and]...a study of listings from the online auction site eBay for Victaulic products."[5] The Court of Appeals further found Customs Fraud bolstered its first amended Complaint by attaching an expert declaration opining Customs Fraud now provided "overwhelming evidence" of Victaulic improperly marking its pipe fittings with attached examples. It instructed motions to amend "should be granted" and the court has "rarely upheld dismissal with prejudice of a Complaint when the Plaintiff has been given no opportunity to amend."[6] Victaulic moved for rehearing. Our Court of Appeals denied rehearing. Victaulic answered the first amended Complaint and the parties began discovery.

Victaulic then petitioned for certiorari. Someone (presumably on Customs Fraud's behalf) asked Public Citizen Litigation Group of Washington, D.C., a non-profit public interest law firm, to assist in opposing Victaulic's petition for certiorari. We do not have a retainer agreement under Pennsylvania law and no basis to confirm Customs Fraud agreed to pay Public Citizen and when. Scott Nelson, an experienced advocate and former law clerk of Justice White, along with a Supreme Court fellow Nick Sansone, completed most of the work on the response to Victaulic's certiorari petition. Public Citizen worked 44.5 hours from July 11 until July 31, 2017. Public

4

Citizen now seeks $27,973.90 for these 44.5 hours. The Supreme Court denied Victaulic's petition on October 2, 2017.

## *Discovery efforts.*

While awaiting the Supreme Court's decision on Victaulic's certiorari petition, the parties began discovery planning in this Court with Judge Stengel. During discovery, Customs Fraud deposed Victaulic's Global Trade and Compliance Manager Allen Roberts, responsible for overseeing Victaulic's compliance with country-of-origin marking requirements.[7] Customs Fraud concluded Mr. Roberts' sworn testimony confirmed Victaulic knew of its unmarked products. Customs Fraud argued Victaulic became aware of parts made in Poland not marked with country of origin but continued to import unmarked products from Poland and China. Customs Fraud argued Victaulic marked their products using methods, such as an "ink stamp," not permitted in the United States. Customs Fraud understood Mr. Roberts to admit the use of ink stamps.[8] Customs Fraud pursued discovery hoping to show Victaulic avoided its marking duties and thus, evaded their legal obligation to pay marking duties. Customs Fraud argued Customs and Border Protections notified Victaulic of its failure to mark products via a "Notice to Mark" regarding failure to mark steel flanges from China with a country of origin.

Customs Fraud propounded interrogatories and document requests on Victaulic. Its counsel engaged in face-to-face meetings and negotiations between counsel, prepared Customs Fraud's initial disclosures, drafted a Joint Status Report, and prepared documents for production. Victaulic began a rolling production of about 475,000 pages of documents.

Customs Fraud retained two additional attorneys to conduct an initial review of Victaulic's records. Customs Fraud conducted depositions of Victaulic employees, defended depositions taken by Victaulic's counsel, served discovery requests on Customs and Border Protection,

analyzed import data provided by Victaulic, drafted and served a Rule 30(b)(6) notice on Victaulic, and retained experts.

Victaulic responded by, among other steps, asking Kelli R. Thompson, a former employee at Customs and Border Protection, to explain the Customs and Border Protection's enforcement process. Ms. Thompson's expert report contradicted several of Customs Fraud's claims. While Customs Fraud alleges country of origin markings must be visible when the product is in use, Ms. Thompson claimed there is no such rule. Ms. Thompson opined the marking must only be in a conspicuous place.[9] Ms. Thompson opined the so-called "unlawful" methods of marking presented by Customs Fraud are acceptable because "they are the equivalent of paint stenciling."[10] Ms. Thompson also opined there is no Customs and Border Protection "form or other document… in which an importer is required to, should, or can, declare special marking duties" disputing Customs Fraud's theory Victaulic intentionally avoided payment.[11] Victaulic stridently maintained its innocence, claiming Customs Fraud's theories lacked evidentiary support.

### *Settlement efforts.*

Upon Chief Judge Stengel's retirement from our Court, the Clerk of Court reassigned this case to Judge Smith.[12] The Clerk of Court then reassigned the case to us a couple weeks later.[13] We scheduled the close of discovery for December 21, 2018 with trial set for April 22, 2019.[14]

On September 21, 2018, Customs Fraud began settlement negotiations. The settlement process involved meetings with Victaulic's counsel and negotiating an agreement to be signed by both parties. The parties reached agreement on December 11, 2018 but waited for the Department of Justice to approve the settlement. The parties jointly moved to extend the trial deadline while they pursued settlement and we extended the trial date until June 3, 2019.[15]

6

*The Department of Justice approved the $600,000 settlement.*

The parties signed a formal settlement agreement on April 10, 2019. Victaulic agreed to pay $600,000 to the United States. Victaulic also agreed the United States could pay $174,000 of the $600,000 settlement amount to Customs Fraud.[16] Congress, through the False Claims Act, allows only thirty percent of the total settlement amount be awarded to the relator. The United States awarded twenty-nine percent of the $600,000 to Customs Fraud.

By April 26, 2019, the parties jointly reported a completed settlement on the merits but no agreement on Customs Fraud's requested attorney's fees.[17] The parties agreed to mediate the attorney's fees issues with Judge Heffley's assistance and, if unable to resolve, file memoranda seeking an award of attorney's fees. The parties could not resolve the attorney's fees.

**II. Analysis**

Unable to resolve the attorney's fee demand, Customs Fraud now moves for reasonable attorney's fees and expenses under 31 U.S.C. § 3730(d)(2). It requests reimbursement of attorney's fees of $1,522,331.20 plus expenses of $46,832.78 for Tycko; $370,262.00 plus expenses of $15,204.90 for local counsel Manko, Gold; and $24,863.50 for Public Citizen related to opposing the petition for certiorari. Customs Fraud argues the False Claims Act requires it be awarded reasonable attorneys' fees and expenses.

Victaulic raises several objections but focuses most of its challenge on relitigating the merits of Customs Fraud's claims, particularly challenging the work effort before the discovery period. It essentially argues Customs Fraud's claims lacked merit and should be considered frivolous. It repeatedly argues Custom Fraud abandoned the eBay product study and should not be compensated for work which it later conceded did not relate to their proof. But it concedes

paying $600,000 to the United States to resolve these claims. The day to challenge the merits has largely passed except to the extent we find the number of billed hours to be unreasonable.

Congress allows us to award a person initiating a False Claims Act claim recover reasonable expenses necessarily incurred plus reasonable attorney's fees and costs to be awarded against the government contractor.[18] Under the False Claims Act, we must award reasonable attorney's fees "when a [False Claims Act] suit results in a settlement in which the Defendant agrees to pay money."[19]

Our analysis begins with our Court of Appeals' recent direction in *United States ex rel. Palmer v. C&D Technologies, Inc.*[20] A contractor objected to attorneys' fees arguing the relator received "very modest results" of a $1.7 million settlement representing "about six percent of the relator's demand in the second amended Complaint." Judge Pratter reduced the fee by ten percent after otherwise addressing the contractor's challenges.[21] Judge Pratter also approved the Community Legal Services' ("CLS") rates at the mid-point of the rates for a reasonable hourly rate, disallowed travel time, reduced recovery for depositions, and applied a lower multiplier for the hours billed in preparing a reply brief.[22] Judge Pratter limited fees recoverable for time at depositions of two attorneys given her noticed concern as to the number of counsel attending depositions and limiting recoverable preparation time to one attorney and up to maximum of 1.75 hours per hour of documented deposition time. The relator appealed arguing Judge Pratter erred by reducing the billable rates and portions of the fee award relating to motions, depositions and travel expenses beyond the contractor's specific challenges. The relator argued our discretion is limited to the amount the contractor contends is reasonable. Our Court of Appeals disagreed, affirming Judge Pratter's reduction of the relator's fee by more than the contractor sought. The Court of Appeals held we cannot *sua sponte* reduce fees without an objection and cannot decrease

8

a fee award based on factors "not raised at all" by the adverse party.[23] But objections allow us to review the merits of the objection even if the amount required to be deducted exceeds the specific objection. The Court of Appeals affirmed Judge Pratter again reminding contractors of the substantial discretion afforded to district courts to determine reasonable attorneys' fees given our better position to evaluate the underlying litigation in awarding attorneys' fees.[24] Our obligation is to provide a concise but clear explanation of our reasons for the fee award.[25]

### A.    Customs Fraud is entitled to fees for efforts resulting in a $600,000 settlement.

Victaulic asks we substantially reduce the requested attorney's fees essentially equal to the percentage of the reduction from the demand in the first amended Complaint to the $600,000 settlement. Among other arguments, it argues we should consider cases in which a court awarded fees to the contractor based upon the frivolous nature of the relator's complaint, including citing a case where a court considered seventy-three cases filed into a multidistrict litigation all of which included "clearly frivolous claims."[26] Victaulic argues we should revisit the merits of Customs Fraud's claims, decide they are baseless and then either substantially reduce or eliminate most or all of the billed hours as unreasonable. Victaulic argues the fee, regardless of the hours expended, should be equal to the percentage of the settlement to the demand: the ratio between $920.66 million and $1.769 billion in damages which Victaulic believes Customs Fraud sought and the $600,000 settlement. In other words, award .034 percent to .065 percent of the requested fees. Victaulic reaches so far as to suggest we could deny all fees and find, under the *Natural Gas Royalties* reasoning from the Court of Appeals from the Tenth Circuit, Customs Fraud asserted "clearly frivolous claims."

Victaulic reaches too far. Possibly figuring "nothing ventured, nothing gained", Victaulic strains the credibility of its otherwise fair objections by suggesting we should award no fees. It

9

agreed to pay $600,000 in settlement of Customs Fraud's False Claims Act case. Victaulic now asserts it paid this settlement for "clearly frivolous claims" while knowing, by agreeing to this settlement, we have a mandatory obligation to award reasonable attorney's fees in a settlement where it agreed to pay money. This is not the egregious conduct presented to the court of appeals in *Natural Gas Royalties*. Victaulic argues the $600,000 paid is "nominal." This argument is beyond cavil. We cannot think of a possible interpretation of the word "nominal" describing a payment of $600,000. This is a substantial settlement. The United States' acceptance of the settlement confirms the wisdom of the recovery. Victaulic knew it could have opposed a settlement and gone to trial in mid-April 2019. Its argument as to nominal damage may have been more successful had the jury come back with a truly nominal award. Victaulic, represented by experienced international counsel, agreed to pay $600,000. We are not aware of a basis to now turn the mandate of the False Claims Act's payment of attorney's fees into exercising our discretion to reduce the requested fees by the same percentage of the settlement to a litigation demand because Victaulic believes it settled for a nominal amount for its purpose.

We will not accept Victaulic's invitation to exercise our discretion to revisit its decision to pay $600,000 to settle claims. Both the United States and Victaulic believed in the fairness of this offer. Either the United States or Victaulic could have opposed the $600,000 payment. Unlike Judge Pratter in *Palmer*, we did not live with the discovery and pleadings in this case and do not know whether the underlying conduct and steps taken in litigation warranted a finding of less than the billed hours. Other than challenging the merits of the claim contrary to our Court of Appeals' view, Victaulic cannot point us to a lack of success in the case.

We do not see merit in Victaulic's argument as to denying all fees, or a substantial discount, based on Customs Fraud obtaining $600,000 rather than the alleged hundreds of millions of dollars

demanded during the case. This is not a civil rights case where we should exercise our discretion to reflect the value of effort placed into the case compared to the result. But we must also be mindful the requested fees in excess of $2 million are over three times the amount recovered for the United States. Like Judge Pratter, we find this multiplier of attorney's fees for a $600,000 claim does portend of some improper management of the case and possible penalty for the defendant contractor. We do not want to reward relators who feel a carte blanche to litigate, obtain any recovery, and then seek to recover the entirety of attorney's fees spent chasing frivolous theories. The False Claims Act is not a reward for counsel filing cases with no merit. We are mindful some cases settle based upon a business evaluation of a continuing cost of lawsuits regardless of the limited merits. But, unlike those types of cases, much of the billed time reviewed today focused on getting beyond the pleadings, including succeeding twice in our Court of Appeals and in the Supreme Court's denial of certiorari. Other than Victaulic's specific challenges below to unrecoverable or vague time, the work effort resulted in setting precedent in this developing area in our Court of Appeals and an eventual $600,000 recovery. Again, not a nominal recovery in this Court or for almost anyone else. Unlike Judge Pratter, we did not evaluate the lawyers' conduct on a day-by-day basis; to the contrary, counsel effectively moved to resolve or try this case once the Clerk reassigned the case to our docket. We do not encourage or endorse lawyers setting expectations and demands wildly disproportionate to the value of the case which undoubtedly cost Victaulic more fees and costs than it otherwise may have incurred for a case resulting in a $600,000 settlement, but we cannot join Judge Pratter's reasoning in *Palmer* and find a limited discount appropriate.

11

**B.    Counsel is entitled to reasonable attorney's fees and expenses for the billed hours.**

Customs Fraud argues Tycko, Manko Gold, and Public Citizen recorded their hours for tasks both "useful" and "of a type ordinarily necessary" to the case, warranting a reasonable fee. Customs Fraud argues the total hours are reasonable because the case spanned six years of complex litigation. Victaulic's litigation prompted half of the hours worked by Customs Fraud's counsel. In Victaulic's effort to dismiss Customs Fraud's Complaint, it chose to litigate the public disclosure bar issue and the issue of whether marking duties are ever recoverable under the False Claims Act. Victaulic's petition for a writ of certiorari is the sole reason for Public Citizen's involvement in the case.

**1.    Customs Fraud is entitled to reasonable hours for pre-discovery described services.**

Victaulic argues hours incurred by Customs Fraud from its pre-filing investigation through Victaulic's answer are not reasonably expended as they were based upon a product study which Customs Fraud later agreed not to use. Victaulic again relies upon our decision in a civil rights case with discretionary fees to allow us to reduce reasonable hours expended based on the pursuit of unsuccessful claims. Victaulic seeks to eliminate 1,627.2 hours including hours associated with the appeal to the Third Circuit and Customs Fraud's opposition to its petition for certiorari.

We disagree. Victaulic offers us no basis to find the hours spent in pre-filing investigation, Complaint, first amended Complaint and the appellate process should somehow not be permitted. Customs Fraud succeeded in the Court of Appeals and in the Supreme Court. As a result of its efforts, it eventually received a sizable settlement, albeit not the amount Victaulic evaluated as its risk. For the same reason, we are not persuaded as to Victaulic's challenges to the product study and to certain experts based on the product study based upon our decisions in a civil rights context

12

where the plaintiff's liability theory did not survive pre-trial motions.[27] Cases often develop beyond the initial complaint. As it is intended, discovery clarifies the liability and often allows a party to seek alternative theories with the liberal amendment required under Fed.R.Civ.P. 15. We recognize hours invested in theories which, at their core, survive until resolution even if the basis for the initial suspicion is found wanting and other facts support the same liability theory. Investing time in developing these facts is compensable.

## 2. We do not award fees for insufficient descriptions.

Victaulic challenges certain descriptions which identify communications or conferences without identifying the subject matter. Victaulic asks us to disallow 115.2 hours based upon vague entries such as telephone conferences with co-counsel, internal correspondence and calls with clients. We reviewed these time entries. Almost all of the 115.2 hours represented in the cited entries are vague and unable to be confirmed as having anything to do with this case. For example, "external correspondence", "email", "conference" and "call" with no information as to how this effort relates to the case.

In limited instances, counsel showed us they knew how to properly account for time by disclosing "call with Department of Justice attorney regarding status" or "call... regarding status of upcoming projects." In those limited instances, we can determine the context of the communication from surrounding time entries:

| DATE | DESCRIPTION | ALLOWED HOURS |
|------|-------------|---------------|
| 4/2/13 | Drafting, editing disclosure statement, meeting with J. Tycko. | 4.0 |
| 4/18/13 | Meet with Jon re: Victaulic case and strategy, researching Victaulic government contracts. | 0.9 |
| 9/6/13 | Conference call, legislative history research, external correspondence. | 1.5 |

| 12/10/14 | Revising letter to J. McLaughlin, internal correspondence. | 0.30 |
|---|---|---|
| 10/19/16 | Telephone call with Department of Justice attorney regarding status. | 0.5 |
| 11/4/16 | Review draft letter to Department of Justice, and emails to A. Haac with edits and suggestions for same. | 0.80 |
| 7/26/17 | Internal correspondence, reviewing product pictures. | 0.20 |
| 1/11/18 | Telephone call with AUSA R. Bernstein regarding status. | 0.50 |
| 2/26/18 | Call with DOJ, compiling documents to forward. | 2.10 |
| 4/12/18 | Internal meeting re: case next steps. | 1.40 |
| 8/7/18 | Telephone call with co-counsel regarding status of upcoming projects; Draft and circulate to-do list. | 1.40 |
| 9/4/18 | Review and respond to emails from J. Bohn and S. Schiller regarding various issues. | 0.80 |
| 11/5/18 | Meet with A. Haac regarding upcoming projects, and email regarding same. | 0.50 |
| 1/4/17 | Review Drobny proposal; emails regarding same. | 0.30 |
| 10/30/17 | Confer with Tycko; update Colon and Salvemini on case. | 0.50 |

But we should not have to look to other entries. We expect lawyers billing a client or knowing they will need to ask a court to review their time, will closely review the time entries.[28] We strike eighty-nine hours of the challenged 115.2 hours as insufficiently described. We award the reasonable hourly rates for the challenged time described above. Unlike the parties' citation to our decision in *Middlebrooks v. Teva Pharm, USA, Inc.*,[29] we are unable to determine from the context of other daily entries exactly what is happening in these calls, conferences, emails and other tasks.

### 3. We do not award travel time.

Customs Fraud agrees to withdraw travel time consisting of 66.2 hours. We will not award fees for 49 hours billed by Jonathan Tycko or 17.2 hours billed by Anna Haac.

### 4. We allow Customs Fraud's time incurred in preparing for, and deposing, witnesses.

Victaulic challenges the amount of time spent in preparing depositions, including travel to and from depositions within the forum. Victaulic seeks to strike 100.1 hours of preparation time for depositions. Victaulic relies upon *Palmer* where our Court of Appeals affirmed Judge Pratter's extensive analysis of the amount of attorneys billing on depositions. We have no basis to believe Customs Fraud over-billed time for depositions. Victaulic offers us no basis to challenge the amount of time necessary for these depositions. These depositions, particularly of Mr. Roberts, appear to have assisted Customs Fraud's arguments. Victaulic's failure to provide a specific challenge to the deposition time distinguishes its argument from the arguments reviewed in *Palmer*. We cannot decide "reasonable" preparation time being limited to 1.75 preparation hours per hour of deposition. Judge Pratter could make this finding especially after she warned counsel of the potential overloading of attorneys in depositions. We do not have a similar basis.

### 5. Customs Fraud withdraws 9.1 hours spent on a press release and unrelated cases.

Customs Fraud agrees to withdraw 9.1 hours billed on a press release and unrelated cases. We disallow fees for 2.4 hours billed by billed by Jonathan Tycko, 1.6 hours billed by Anna Haac, and 4.1 hours billed by Suzanne Schiller.

### 6. We approve expenses except for those incurred in travel and press release.

We disallow $2,604.16 for travel expenses and $3,841.19 for the press release. We find the remaining $55,592.33 in expenses are reasonable, described in the context of the time records, and necessary.

### 7. We award hourly rates approved in this District for challenged hourly rates under the CLS schedule for the work in this District and the Washington D.C. hourly rates for Public Citizen's entirely D.C. work.

As in *Palmer*, we are limited in our scope of review to Victaulic's objections. It elected not to challenge the $610 hourly rate for a lawyer admitted to the Bar in 1987 (S. Schiller) or $540 hourly rate for a lawyer admitted to the Bar in 1995 (T. Kantorzyk). It also does not oppose Manko Gold's staff rates, and hourly rates billed by Tycko's paralegals and document review attorneys. So we are left with Victaulic's challenges to the hourly rates requested by Attorney Tycko ($894 with twenty-seven years' experience), Attorney Nelson of Public Citizen ($864 with thirty-five years' experience), Attorney Haac ($742 with thirteen years' experience), Attorney Colon of Manko Gold ($355 with four years' experience), and Attorneys Azhdam, Berger, Finley, Wolfe, Salvemini, and Sansone (ranging from $345 to $455 with less than two years' experience).

We apply our independent discretion to ensure current market rates at the time of the petition representing prevailing rates in this District for similar services by lawyers of reasonably comparable skill, experience and reputation. The hourly rates sought by Customs Fraud's counsel must be reasonable based on the appropriate legal community for this case. We set the current market rate when fees are awarded, not the rate at the time of services performed.

Customs Fraud does not adduce a retainer letter evidencing its agreement to pay anything to lawyers. Absent an agreement showing the hourly rates Customs Fraud agreed to pay these

16

lawyers, we need to find some measure of comparison. The retainer agreement would offer guidance, but counsel elected not to produce it. We cannot determine what Customs Fraud would be willing to pay. Customs Fraud argues we should award Manko Gold the same rates it charges its fee-paying clients even though we do not have a retainer agreement showing Customs Fraud agreed to those rates. As Tycko apparently does not charge fee-paying clients on an hourly basis, it presents three different options: a *Laffey* matrix, the rates charged by Victualic's counsel, or the rates set by Community Legal Services for this District.

Customs Fraud asks we use an adjusted *Laffey* matrix to determine an hourly billed rate. The *Laffey* matrix uses a formula based on the number of years an attorney is out of law school and an adjustment factor based on the year. The rate for paralegals and law clerks is only dependent on the year. When counsel first began representing Customs Fraud in May 2013, the *Laffey* matrix shows paralegals and law clerks entitled to $170 per hour, Attorney Tycko to $753, and Attorney Haac to $625.[30] The current rates on the *Laffey* matrix show paralegals and law clerks entitled to $202, Attorney Tycko to $894, and Attorney Haac to $742.[31] Attorney Tycko created a chart to show the breakdown of attorney's fees over the litigation. This calculation of attorney's fees does not include the time spent negotiating with the Department of Justice over the relator's share, preparing the Motion for fees, or the related Motion for leave to conduct limited discovery of the hourly rates charged by Victaulic's counsel. We are not aware of authority permitting the use of a *Laffey* matrix based on Washington, D.C. hourly rates to decide the reasonableness of fees in this District. We decline to do so. Tycko elected to sue in this District. It or Customs Fraud solicited local counsel and Supreme Court counsel to assist in prosecuting their claim in this chosen District. We presume Tycko (as experienced counsel now seeking over $800 an hour for its principal lawyer) studied the hourly rates of comparable venues before

17

choosing to file here. Having made its choice to litigate here, we will award its fees based on reasonable hourly rates set by comparables in this District. We are not aware of a case applying the "*Laffey* matrix" as a reasonable hourly rate in this District.

But, as Victaulic recognizes, the *Laffey* matrix "reflects the 'applicable hourly rates in the D.C. legal market.'"[32] Public Citizen's entire work effort involved briefing in the Supreme Court. It performed no services in this District. As Victaulic concedes the applicable hourly rate for the District of Columbia may be based on Customs Fraud's reported rates, we will award the market rate for Public Citizen requested by Customs Fraud.

Customs Fraud next argues the rates charged by Victaulic's lawyers provide strong evidence of what constitutes a "reasonable" rate. "Reasonableness" is comprised of what a defendant is willing to pay its counsel to do and how much a defendant is willing to pay. Customs Fraud proposed a "market+" approach, citing legislative history of the False Claims Act suggesting Congress intended attorneys representing False Act Claim relators to be paid above market rates. Since this case resulted in a $600,000 payment and a future benefit based on new precedent, Customs Fraud argues counsel deserves the incentive proposed in False Claims Act cases. The Manko Gold rates would account for the False Claims Act-specific interests. While the logic is of some concern based on Victaulic using counsel from the District of Columbia in this District, we cannot find using District of Columbia hourly rates is appropriate for a fee award in the Eastern District of Pennsylvania. We should not be concerned if Victaulic chose to pay more (or less) than reasonable rates in this District. We did not compel disclosure, and will apply, the hourly rates identified by Victaulic's counsel.[33]

The CLS rates are "the baseline for reasonableness in this District," meaning they are lower than would be used under the *Laffey* matrix or billed by Victaulic's counsel. Customs Fraud argues

18

we should reject these alternatives but we could use the CLS rates to calculate the bare minimum reimbursement. But compared to what in this District?

Absent further evidence, we again look to the rates set by Community Legal Services for the appropriate hourly rate in the Eastern District of Pennsylvania. Mindful of Congress's interest in providing fair attorney's fees often above the minimum rates, we award rates towards the higher end of the CLS rates for each of the challenged attorneys.

## III. Conclusion

We partially grant Customs Fraud's Motion for attorney's fees and costs. We award Tycko and Manko Gold, absent a retainer agreement or fair comparable in this District for relator hourly rates, reasonable fees in the ranges set by Community Legal Services for this District for all services adequately described and not related to travel or a press release through the filing of the Motions for fees. We award Public Citizen the reasonable hourly rates set for their services provided entirely before the Supreme Court in Washington:

| TIME KEEPERS | APPROVED RATE | APPROVED HOURS | TOTAL FEES |
|---|---|---|---|
| Jonathan Tycko | $700 | 553.60 | $387,520.00 |
| Anna Haac | $450 | 677.7 | $304,965.00 |
| Rebecca Azhdam | $220 | 12.3 | $2,706.00 |
| Stephanie Berger | $220 | 27.2 | $5,984.00 |
| Eliza Finley | $220 | 29.4 | $6,468.00 |
| Phoebe Wolfe | $220 | 12.0 | $2,640.00 |
| Amy Berkowitz | $202 | 91.6 | $18,503.20 |
| Natasha Fletcher | $202 | 24.3 | $4,908.60 |
| Matthew Folkerts | $202 | 7.2 | $1,454.40 |
| Mia Golschalk | $202 | 10.3 | $2,080.60 |
| Nathan Laporte | $202 | 45.8 | $9,251.60 |
| Sydney Tend | $202 | 59.9 | $12,099.80 |
| Doc Review Attorneys | $200 | 411.0 | $82,200.00 |
| Suzanne Schiller | $610 | 227.3 | $138,653.00 |
| Todd Kantorczyk | $540 | 5.3 | $2,862.00 |
| Claudia V. Colon | $275 | 377.7 | $103,867.50 |
| Maria Salvemini | $220 | 74.7 | $16,434.00 |

| Cemone R. Cali | $205 | 0.3 | $61.50 |
| Ronald DeJesus | $170 | 36.9 | $6,273.00 |
| Scott Nelson | $894 | 17.6 | $15,734.40 |
| Nick Sansone | $455 | 26.9 | $12,239.50 |
| | | **Total Fees:** | **$1,136,906.10** |

We also award reasonable expenses, with the exception of travel and press release costs, of $55,592.33.

---

[1] ECF Doc. No. 120-2 at 30.

[2] ECF Doc. No. 12-2 at 84 (Apr. 22, 2013 entry). We use the pagination assigned to the document by the CM/ECF docketing system.

[3] ECF Doc. No. 28, Notes of Testimony ("N.T.") Jan. 30, 2014.

[4] 839 F.2d 242, 247 (3d Cir. 2016).

[5] *Id.*

[6] *Id.* at 249.

[7] ECF Doc. No. 138, ¶ 6.

[8] ECF Doc. No. 138, ¶¶ 20-21.

[9] ECF Doc. No. 128-4 at 11. We use the pagination assigned to the document by the CM/ECF docketing system.

[10] *Id.* at 12.

[11] *Id.* at 18.

[12] ECF Doc. No. 81.

[13] ECF Doc. No. 87.

[14] ECF Doc. No. 89.

[15] ECF Doc. No. 102.

[16] ECF Doc. No. 120-2 at 126. We use the pagination assigned to the document by the CM/ECF docketing system.

[17] ECF Doc. No. 111.

[18] 31 U.S.C. § 3730(d)(2).

[19] *Simring v. Rutgers*, 634 F. App'x 853, 857 (3d Cir. 2015).

[20] 897 F.3d 128 (3d Cir. 2018).

[21] *Id.* at 135.

[22] *Id.* at 138.

[23] *Id.* at 137 (quoting *Bell v. United Princeton Properties, Inc.* 884 F.2d 713, 720 (3d Cir. 1989)).

[24] *Id.*

[25] *Id.* (citing *Bell*, 884 F.2d at 721-23).

[26] *In re Natural Gas Royalties Qui Tam Litig.*, 845 F.3d 1010 (10th Cir. 2017).

[27] *McGuire v. Neidig*, No. 14-1531, 2017 WL 1319930 (W.D.Pa. Apr. 7, 2017).

[28] Attorney Tycko billed 3 hours in the days before filing this Motion reviewing "all time entries." ECF Doc. No. 120-2 at 123 (May 31, 2019 entry).

[29] *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, No. 17-412, 2019 WL 936645 (E.D.Pa. Feb. 26, 2019).

[30] ECF Doc. No. 120-2 at 129.

[31] *Id.*

[32] ECF Doc. No. 128 at 14.

[33] Unlike our analysis earlier this year in *Middlebrooks* cited by Customs Fraud, Victaulic's counsel did not volunteer their rates to show reasonableness. In *Middlebrooks*, the defendant offered hourly rates as a comparator. We do not face this issue. But like *Middlebrooks,* we lack competent comparators for the challenged hourly rates from the community other than the CLS rates.